358 P.2d 1038

**Application of Melvin FREUND for a Writ of Habeas Corpus for Melvin Duane Freund, Petitioner-Respondent,**

v.

**Marion L. ENGLISH and Opal V. English, husband and wife, Defendants-Appellants.**

No. 8871.

Supreme Court of Idaho.

Jan. 17, 1961.

Donart & Donart, Weiser, S. Ben Dunlap, Herbert W. Rettig, Caldwell, for appellants.

Gigray & Boyd, Caldwell, for respondent.

KNUDSON, Justice.

Melvin Freund (respondent) and Roberta Freund were married August 10, 1952. Melvin Duane Freund (hereinafter referred to as Duane) was born the issue of said marriage on December 21, 1954. Respondent and Roberta Freund were divorced by decree dated February 6, 1956, under the provisions of which Duane's custody was awarded to his mother and respondent was granted the privilege of visitation with said child at all reasonable times. Subsequent to the divorce and until September, 1958, Duane and his mother lived with appellant' who are Duane's maternal grandparents. During September, 1958, Duane and his mother moved to Adrian, Oregon, where they lived until the mother's accidental death February 17, 1959, since which date Duane has lived with appellants.

On June 10, 1957, respondent married his present wife and shortly thereafter moved to Lodi, California, where he, together with his wife and an adopted daughter, has since resided. On February 23, 1959, respondent filed a petition for writ of habeas corpus designed to obtain custody of Duane to which appellants made answer and on June 24, 1959, a hearing was regularly had thereon. Under a decree filed therein on November 25, 1959, respondent was granted the permanent care, custody and control of said minor child, Duane, and this appeal is from said judgment.

Each of appellants' assignments of error relates to a claimed insufficiency of the evidence to sustain certain findings made and conclusions reached by the trial court. Actually, what appellants' assignments of error amount to is that the trial court committed error in awarding custody of the child involved to respondent rather than to appellants.

Appellants contend that the court erred in finding that respondent is able financially to provide the ordinary care, education and necessary support to maintain the child in good, wholesome and moral circumstances and surroundings. In support of their contention appellants refer to events which occurred prior to the divorce obtained by Duane's mother, as indicative of what respondent's conduct and dependability will be in the future. In this connection appellants point out that during June, 1955, when respondent and his then wife left Nampa to go to appellants' home

at Cambridge, Idaho, respondent left an unpaid rental obligation of $22.50. Said account was turned over to a collection agency and later paid by respondent.

Appellants also call attention to the fact that at the time of the hearing of this matter, respondent still owed an unpaid balance of $21 to a hospital for services rendered in connection with Duane's birth. Respondent testified that he is not otherwise indebted except for current bills.

The record discloses that during September, 1957, respondent enrolled in Stockton College where he has since pursued a predentistry course of study. Respondent's present wife is regularly employed as a nurse at a salary of $320 per month and respondent has an arrangement with Dr. Leiske (a physician and surgeon who is respondent's father-in-law) whereby Dr. Leiske advances respondent $100 per month as a loan to be repaid when respondent completes the dental course he is pursuing. Dr. Leiske testified that he has also agreed to advance, for the use of respondent and his family, additional funds necessary to permit respondent to complete the dental course of study. During school vacation periods respondent earns what he can at miscellaneous jobs.

It is common knowledge that in many cases, where children are involved, the earnings of the wife provide the principal means of maintenance for the entire family while the husband pursues a course of study to enable him to later provide a more desired standard of living. It is true that misfortune may in the future compel drastic changes in respondent's present and anticipated financial arrangements, but the record does not establish that respondent is presently unable to provide proper care and education for his said son.

The trial court's finding that respondent is financially able to provide reasonable support, care and education for the child involved is amply supported by the evidence.

The evidence tending to reflect some undesirable laxities in respondent's moral standards also relates to incidents which occurred prior to the divorce (February 1956). Such incidents involved intoxication on occasions and one instance of offensive conduct toward a lady. The last mentioned incident is categorically denied by respondent.

The record contains a substantial amount of evidence to the effect that respondent, since said divorce, has not indulged in drinking intoxicants, and there is no evidence of misconduct on the part of respondent since said time. On the contrary the evidence relative to said period is convincing that respondent regularly attends church and is active in its youth program; that he has applied himself to his school work and is receiving passing grades. During December, 1958, a senior proba-

**144**

tion officer of San Joaquin County, California, made an investigation regarding respondent and his home in connection with respondent's petition to adopt the four-year-old daughter of respondent's present wife. As a part of such investigation inquiry was made by said officer regarding the financial ability of the petitioner to support said child; supervision of the child during hours of the day when both parents would be away from home and also as to adequacy of the home and surroundings. Following such investigation the officer recommended to the Superior Court of said county that respondent's petition be granted.

There is no evidence which tends to challenge the integrity or moral worth of respondent subsequent to February, 1956. Whatever may have been his conduct prior to said date, the evidence clearly supports the court's finding "that he has reformed."

It is strenuously argued by appellants that the court erred in finding that it is to the best interest of Duane that he be with his father. Appellants refer to the allegations of the complaint and the provisions of the decree in the divorce action as evidence of respondent's dereliction toward his child. In this respect the record shows that during June, 1955, respondent's then wife was requested by appellants to come to appellants' home in Cambridge, Idaho, to assist in caring for appellant, Mrs. English, who was ill. Respondent went with

his wife, however, there is some conflict in the evidence as to whether respondent remained in Cambridge. Unfortunately the relationship between appellants and respondent was not a pleasant one. Appellant, Mr. English, acknowledged that there was considerable ill feeling between himself and respondent and that he, Mr. English, did not want respondent around. Appellant, Mrs. English, stated that there was ill-feeling between herself and respondent "to a certain extent". Respondent's then wife remained with appellants and during December, 1955, she filed action for divorce. Respondent filed no appearance in the divorce action and a decree, which did not provide for child maintenance, was entered February 6, 1956. In the instant case considerable oral and documentary evidence, some of it conflicting, was received tending to show what maintenance respondent has provided for his son and what effort he has made to visit Duane since the divorce decree was entered. The trial judge who granted the divorce decree also entered the decree from which this appeal is taken, and having had the opportunity of observing the respective witnesses while testifying said judge was in a good position to determine the merits or demerits of the contentions of respective parties to this proceeding.

The right of a parent to the care, custody and control of his child is a natural right and the law' applicable in proceedings of this nature is well settled in this

state. The rights of natural parents over their children is stated in I.C. § 32–1007 as follows:

> "The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings. If either the father or mother be dead or be unable or refuse to take the custody or has abandoned his or her family, the other is entitled to the child's custody, services and earnings."

Although the welfare of the child controls over the general right created by laws of this character, in a proceeding to obtain custody of a child from a natural parent, the burden is upon the party seeking such custody to prove abandonment or a forfeiture of the parent's right or that the parent is unfit or unable to properly care for the child. I.C. § 32–1007; Schiller v. Douglas, 48 Idaho 803, 285 P. 1021; Piatt v. Piatt, 32 Idaho 407, 184 P. 470; Application of Altmiller, 76 Idaho 521, 285 P.2d 1064.

In the instant case the trial court found that respondent is legally entitled to the custody of his child; that respondent loves said child and both he and his present wife desire that said child reside with them in their home; that respondent is a fit and proper person to have the custody of said child and that his best interest and welfare would be served by awarding his care, custody and control to respondent.

Such findings dispose of the essential facts to be determined and since they are founded upon competent evidence they are binding upon this Court.

There is no question as to the fitness and ability of appellants to care for said child and we have no doubt that the affection and devotion of appellants toward their grandson has played an important part in his life thus far, however, under the law and facts we cannot disturb the conclusions reached by the trial court. Judgment is affirmed. Costs to respondent.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.