390 P.2d 838

Patsy Carol NELSON, Petitioner-Appellant,

v.

Roland C. STANDEFER and Doris L. Standefer, Defendants-Respondents.

No. 9228.

Supreme Court of Idaho.

March 25, 1964.

Frank E. Chalfant, Jr., Boise, for appellant.

Hawley & Hawley, Boise, for respondents.

\* \* \*

McQUADE, Justice.

The petitioner-appellant, Patsy Carol Nelson, instituted habeas corpus proceedings to obtain custody of her minor daughter from Roland C. Standefer and Doris L. Standefer, respondents herein. Respondents are the parents of petitioner and the maternal grandparents of the child involved in this dispute.

At the conclusion of the hearing held on this case, the trial court quashed petitioner's writ of habeas corpus, dismissed her petition and granted the custody of the minor child to the respondents. The trial court found that petitioner was unfit by reason of neglect and immoral conduct to exercise her natural rights of custody and control of the said minor child. Findings were also entered to the effect that respondents were fit and proper persons to have the custody and control of the minor child.

Petitioner appealed to this court from the judgment quashing the writ of habeas corpus and dismissing her petition. She assigns as error the fact that the trial judge found that she was not a fit and proper person to have the care, custody and control of her minor child, and that respondents were fit and proper persons to have the care, custody and control of the minor child.

At the time the hearing was held on this matter, petitioner was twenty-two years old. This first child was conceived while she was in the United States Marine Corps. Because of her pregnancy, she received a general discharge and went to the home of her parents to live. The child was born out of wedlock on December 28, 1959.

From December, 1959, until November, 1961, petitioner and her child lived with the respondents. The testimony is conflicting as to how petitioner treated her child during this two year period. Respondents testified that petitioner was much more interested in television and having dates with men than she was in the welfare of her own child. Mrs. Standefer testified that petitioner failed to attend to either the material or spiritual needs of her child. Her testimony in reference to this matter is as follows:

"Q. Did your daughter neglect this child when she lived with you?

"A. Yes.

"Q. How did she do that?

"A. Well, wouldn't wash her clothes like I told her to, and when she did wash them she would let them lay around, she would not clean the bed--

room up for purposes to sleep in the bedroom, I have had to tell her to change her pants, she would not iron her dresses to take her to the baby sitter when she did go to work.

"Q. In other words, she did not give it the love and attention a mother should?

"A. No, sir."

Petitioner, on the other hand, testified that she took good care of her child. She stated that she purchased the child's milk and clothes, paid room and board and helped respondents keep their house clean. She further testified that she worked a great deal and paid a baby sitter to stay with the child.

In so far as petitioner's conduct is concerned, respondents testified that she had numerous dates with both a man in his forties and a younger married man. Mrs. Standefer testified that she was "pretty sure" that petitioner had illicit sexual relations with these men at least four or five times.

Petitioner admitted having illicit sexual relations with the married man but stated that such relations were had only under a promise of marriage. She admitted dating the older man; however, she denied having illicit sexual relations with him. Petitioner also testified that she had very few dates after the birth of her child.

As a result of her illicit sexual relations, petitioner again became pregnant. She married Robert Gerald Nelson on November 19, 1961. At the time of her marriage, she was three months pregnant by another man. Petitioner and her husband set up housekeeping in another apartment, and the child went to live with them.

From the very first, petitioner and her husband encountered serious difficulties. He was unable to keep a job and they apparently suffered from a lack of funds. Respondents helped support petitioner and her family during this period.

Respondents testified that petitioner allowed her child to live under filthy, unsanitary conditions. Respondents were particularly descriptive in their assertions that the child was allowed to play and sleep with an unhousebroken dog. Both Mr. and Mrs. Standefer complained of the house odor created by the dog.

Petitioner, however, testified that she was a good housekeeper. She further denied respondents' testimony that the dog was allowed to sleep with the child.

Considerable testimony was elicited at the trial to the effect that petitioner's husband had, on two occasions, severely beaten the minor child. Both petitioner and her husband admitted that these beatings had taken place. There is some small dispute as to the severity of the beatings; however, insofar as this subject is concerned, pertinent

testimony was elicited from Robert Nelson, petitioner's husband, on cross-examination as follows:

"Q. Mr. Nelson, did you ever beat this child?

"A. No. I spanked her extremely hard.

"Q. How hard did you spank her? It was pretty hard, wasn't it? You left your finger marks of your hand?

"A. Yes.

"Q. Do you really think a little child less than two years old is going to learn anything from the beating?

"A. No, she would not mind me or my wife.

"Q. What do you mean, she would not mind, do you expect a little girl to know what is going on?

"A. She knows how to go to the potty and she sits in her chair.

"Q. Do you feel that really was sufficient to beat the child until it was raw?

"A. I did not mean it to be that way.

"Q. It does not mean it is right?

"A. No.

"Q. You admit it was wrong?

"A. I do admit it was wrong.

"Q. How many times did you beat the child?

"A. Twice.

"Q. You admit twice?

"A. Yes.

On March 26, 1962, after having exclusive custody of her child for only four months, petitioner turned over the care and custody of her child to the respondents. Her reasons for relinquishing the child were that she was about to have a baby and further that, "When my husband quit his job at Gem State we were running low on food and fuel and because we did not want her to be in a cold house and afraid of her catching cold we let my mother take her to her house."

In April of 1962, shortly after the birth of her second child, petitioner sought to again obtain custody of her first child. The respondents refused to return the child, and on May 4, 1962 the petition for a writ of habeas corpus was filed.

Although the matter is not entirely undisputed, there appears to be little doubt that the respondents are morally, financially and otherwise fit and proper persons to have the care, custody and control of the minor child. The trial judge so found and this is supported by even the testimony of the petitioner:

"Q. While the child was living— you and the child were living with

your parents, did they treat (the child) well?

"A. Yes.

"Q. You trusted them with (the child)?

"A. Yes.

"Q. You feel they were doing a good job?

"A. I felt that way then, yes."

* * * * * *

"Q. Now do you feel that if the Court granted (the child) to your mother she would treat her well? She would not mistreat her?

"A. She would not correct her.

"Q. You feel she would treat her well?

"A. I think she probably would."

The evidence shows that Mr. Standefer is gainfully employed and has been able to accumulate a small amount of savings. There was abundant testimony to the effect that Mr. and Mrs. Standefer loved the child and treated her well. The grandparents have a stable and adequate home and both are young enough to cope with a growing child.

 Of course, the mere showing of the fitness of the grandparents is insufficient to deprive the mother of the custody of her child. As a general rule, parents have a natural and legal right to the custody of their minor children. When such relationship is established a prima facie case has been made and the burden is then upon the other party to overcome such prima facie case by showing that the natural parent or parents have forfeited such right, or at least that such parent or parents are not fit and proper persons to have custody. Freund v. English, 83 Idaho 140, 358 P.2d 1038 (1961); Application of Altmiller, 76 Idaho 521, 285 P.2d 1064 (1955); Moss v. Vest, 74 Idaho 328, 262 P.2d 116 (1953).

 There is, however, substantial, competent evidence showing repeated acts of immorality and neglect of the child on the part of the petitioner. Her husband, of course, is not a formal party to this suit. However, an award of custody of the child to the mother will necessarily make the child's future, to a certain extent, dependent upon his. At least as long as the mother is his wife, the husband will, in a large measure, participate in the child's future. There is substantial, competent evidence showing him to be guilty of cruelty and financial irresponsibility. Thus, the finding of the trial court that petitioner was unfit to have the custody of her minor child is amply supported by the evidence.

 It is a settled rule of this court that findings of the trial court, supported by substantial, competent evidence, will not be disturbed on appeal. This rule also applies to habeas corpus proceedings of a civil

**90**

nature to determine the right to the custody of a child. Freund v. English, supra; Moss v. Vest, supra; Finn v. Rees, 65 Idaho 181, 141 P.2d 976 (1943); Walker v. Edwards, 32 Idaho 257, 181 P. 932 (1919); Jain v. Priest, 30 Idaho 273, 164 P. 364 (1917).

 Whether the petitioner as mother of the child is the proper person to have the custody is controlled by a determination of her fitness at the time of the hearing as it relates to the welfare of the child. Moss v. Vest, supra. We cannot accept petitioner's contention that the unfortunate actions of her and her husband were so remote at the time of the hearing that they amounted to merely "water under the bridge."

 In cases of this nature, the welfare and best interest of a minor child is the paramount consideration. The child's welfare as a normal human being and future citizen is the polar star by which the court must be guided in awarding its custody. Freund v. English, supra; Application of Paul, 78 Idaho 370, 304 P.2d 641 (1956); Application of Altmiller, supra; Finn v. Rees, supra; Walker v. Edwards, supra; Allen v. Williams, 31 Idaho 309, 171 P. 493 (1918); In re Martin, 29 Idaho 716, 161 P. 573 (1916); Andrino v. Yates, 12 Idaho 618, 87 P. 787 (1906). Opposed to petitioner's promise of rehabilitation is the solid, substantial fact that the child has led a wholesome and happy life in the custody of its grandparents. It is further to be remembered that the child is not being asked to live in a totally new environment; she has spent all but approximately four months of her life in the home of her grandparents. Where the best interests of a minor child will be served by giving it into the custody of grandparents rather than to a parent, such will be done. Application of Altmiller, supra.

The decree in this case was rendered nearly two years ago. It is deplorable that it has taken so long for this case to reach this court. The child is now about four and a half years of age. Conditions may have so materially changed since the decree was rendered that a modification thereof may now be proper, perhaps necessary, for the child's good. But, upon the record before us, not knowing what the present conditions may be, we do not feel justified in reversing the decree for this reason alone. We permit it to stand subject to such changes as the child's best interest may demand, should further application be made. See: Richards v. Christy, 150 Okl. 221, 1 P.2d 168 (1931); Hamann v. Miesner, 148 Okl. 50, 297 P. 252 (1931); Morris v. Morris, 81 Okl. 222, 198 P. 70 (1921).

Judgment affirmed. No costs allowed.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.