529 P.2d 1296

**In the Matter of Charles Joseph EWING and Mary Lisa Ewing, minor children.**

**Parent Terrence H. EWING, Petitioner-Appellant,**

v.

**Leroy GORDON, Defendant-Respondent.**

**No. 11410.**

Supreme Court of Idaho.

Dec. 26, 1974.

Winfred B. Moorer, Peterson, Moorer & Porter, Moscow, for petitioner-appellant.

James E. Morgan, Morgan & Morgan, Lewiston, for defendant-respondent.

DONALDSON, Justice.

Appellant Terrence H. Ewing and Gaitha Ewing initially were married February 25, 1961. Divorce followed on two occasions—May 23, 1968, and again, after remarriage, on April 28, 1970. A son, Charles Joseph Ewing, was born of the first marriage, September 5, 1966, and a daughter, Mary Lisa Ewing, was born of the second, January 30, 1969. Both divorces were granted to the wife by default, and the provisions of the second decree

awarded her custody of the two children and ordered the appellant to pay child support in the amount of $50 per month per child.

Gaitha Ewing and the respondent Leroy Gordon together lived out of wedlock from April, 1970, until May 15, 1971. The latter date they were married. The family subsequently lived as a unit in their home at Pierce, Idaho. A son, Leroy Gordon II, was born May 9, 1972.

Gaitha (Ewing) Gordon died December 18, 1972. In an attempt to obtain the custody of his two children, the appellant Terrence Ewing filed a writ of habeas corpus January 12, 1973. The trial court denied the writ finding that the appellant had conclusively abandoned each child, and that the best interests and welfare of each child would be served by awarding care, custody and control to the respondent. Visitation rights were granted to the appellant. This appeal is taken from the findings of fact and conclusions of law of the district court.

Appellant's asserted error can be summarized into a basic contention that the findings of the trial court of abandonment and that the best interests of each child required that the children's custody be given to respondent were not supported by the record and as such, custody of the two children should have been awarded to him. We disagree.

The long standing rule in Idaho is that the welfare of the child is of primary consideration in determining custody rights in children.[1] In the implementation of this rule, this Court has consistently applied the presumption that a natural parent should have custody of his child as opposed to other lineal or collateral relatives or interested parties.[2] The facts at bar,

---

1. Blankenship v. Brookshier, 91 Idaho 317, 420 P.2d 800 (1966) ; Clark v. Jelenik, 90 Idaho 592, 414 P.2d 892 (1966) ; Application of Altmiller, 76 Idaho 521, 285 P.2d 1064 (1955) ; Finn v. Rees, 65 Idaho 181, 141 P.2d 976 (1943) ; Andrino v. Yates, 12 Idaho 618, 87 P. 787 (1906).

2. I.C. § 32–1007; Yearsley v. Yearsley, 94 Idaho 667, 496 P.2d 666 (1972) ; Blankenship v. Brookshier, supra; Clayton v. Jones, 91 Idaho 87, 416 P.2d 34 (1966) ; Spaulding v. Childrens Home Finding and Aid Society, 89 Idaho 10, 402 P.2d 52 (1965) ; Freund v. English, 83 Idaho 140, 358 P.2d 1038 (1961) ; Moss v. Vest, 74 Idaho 328, 262 P.2d 116 (1953).

through Ewing's showing of natural parentage, establish in the appellant a prima facie case for custody.[3] The burden therefore shifts to the respondent to prove that Terrence Ewing has forfeited his rights.[4] Such proof requires a showing of clear, satisfactory, or convincing evidence that the parent is patently unfit or has abandoned his child,[5] or as in the factual situation at bar, where an adverse party has custody of the child for an appreciable period of time (in excess of three years), the best interests of the child dictate custody being placed with the adverse party if the facts show he is better fitted to raise the child than the natural parent.[6]

The trial court found that Terrence H. disturbed on appeal.[7]
Ewing had conclusively abandoned each child. That finding, if supported by substantial, competent evidence, will not be

The record establishes that from the date of the second divorce, April 28, 1970, until the present, appellant Terrence H. Ewing has made no payments of child support as required by the divorce decree.[8] During said period the appellant was financially able to make the required payments, having lived with and worked for relatives in Montana, California and Texas.

From December, 1970, until May, 1972, Gaitha (Ewing) Gordon did not know the whereabouts of the appellant. On the latter date she discovered that he was in Texas and requested that he pay delinquent income taxes (incurred during their marriage and constituting a lien on the home) in the amount of $498. This he did. The respondent, since his marriage to Gaitha (Ewing) Gordon on May 15, 1971, provided for the support of the three children, including the two involved in this matter.

From August, 1970, until December 20, 1972, the appellant did not visit his children in person, by telephone or by mail. On one occasion he did supply Christmas presents via relatives.

The appellant contends that he left town for the good of his children due to the emotional strain involved in their early visits. He states that he did not attempt to communicate with them because he felt he would not be so allowed by his former wife. He states he did not pay child support because the respondent was living in the house. This Court does not feel that the appellant's arguments establish sufficient just cause to disturb the finding of abandonment by the trial court.

In Clark v. Jelenik, 90 Idaho 592, 414 P. 2d 892 (1966), this Court dealt with a habeas corpus proceeding by a natural father to obtain the custody of his two minor children. The facts were markedly similar to those presented at bar, and this Court affirmed the trial court's quashing the writ and ordering that custody remain in the stepfather. Based upon a finding of the natural father's ability to pay child support, the Court stated:

> "We agree with the trial court that Clark's willful failure to provide the required support for his two minor chil-

3. Blankenship v. Brookshier, *supra*; Nelson v. Standefer, 87 Idaho 83, 390 P.2d 838 (1964) ; Moss v. Vest, *supra*; Schiller v. Douglas, 48 Idaho 803, 285 P. 1021 (1930).

4. Blankenship v. Brookshier, *supra*; Freund v. English, *supra*; Application of Altmiller, *supra*; Schiller v. Douglas, *supra*; Piatt v. Piatt, 32 Idaho 407, 184 P. 470 (1919).

5. Blankenship v. Brookshier, *supra*; Freund v. English, *supra*; Application of Altmiller, *supra*; Schiller v. Douglas, *supra*; Piatt v. Piatt, *supra*.

6. Yearsley v. Yearsley, *supra*; Application of Altmiller, *supra*.

7. This rule applies to habeas corpus proceedings of a civil nature to determine the custody of a child. Blankenship v. Brookshier, *supra*; Moss v. Vest, *supra*; Finn v. Rees, *supra*; Jain v. Priest, 30 Idaho 273, 164 P. 364 (1917). The trial court must be given great discretion in such matters. Application of Altmiller, *supra*; Andrino v. Yates, *supra*.

8. In 1970, appellant's former wife instituted garnishment proceedings against him and received $400.

dren and his disinterest in attempting to communicate with them for 18 months is sufficient to show that he abandoned his children." 90 Idaho at 599, 414 P.2d at 895.

The trial court's conclusion that Ewing abandoned his children is further supported by statute. The Idaho Child Protective Act (I.C. § 16–1601 et seq.) defines abandonment as follows:

" 'Abandoned' means the failure of the parent to maintain a normal parental relationship with his child, including but not limited to reasonable support or regular personal contact. Failure to maintain this relationship without just cause for a period of (1) year shall constitute prima-facie evidence of abandonment."[9]

■ The jurisdiction of the trial court to determine child custody under a writ of habeas corpus is of an equitable nature and the court is given great discretion in the matter.[10] In our opinion, the trial court did not abuse its discretion in finding abandonment by appellant.

■ The district court also found that the best interests and welfare of each child would be served by awarding care, custody and control to the respondent. As earlier stated in this opinion, abandonment is only one of the factors considered in the welfare of a child. Where an adverse party has had custody of a child for an appreciable period of time, in this case over four years, the custody of the child will be left with that party if the best interests of the child so dictate.[11] Such a finding is proper if the adverse party is shown to be better fitted to raise the child than the natural parent. As such, we reject the appellant's argument that only a mandatory showing of abandonment or patent unfitness will suffice to overcome a natural parent's right.

Application of Altmiller, *supra,* was a habeas corpus proceeding by a father against a grandmother to secure the custody of his minor daughter. The child had been in the custody of the wife and grandmother in excess of four years, and upon death of the mother, the father sought custody. The father had visited the child on only one occasion, and did not communicate with the child in any other manner. No support payments were made pursuant to the decree of divorce, but unlike the facts before this Court, the excuse of inability to pay was tendered by the appellant. The moral fitness of the natural father was conceded. The trial court refused to find abandonment and granted custody of the child to the father. This Court upheld the lower court's refusal to find abandonment (relying heavily upon inability to pay) but reversed and quashed the writ on grounds that the grandmother was the better fitted party and could better care for and educate the child. In so holding, this Court stated that it must take into consideration,

"[N]ot only the age and sex of the child, but its prior custody and all other facts and circumstances affecting the welfare and best interests of the child." 76 Idaho at 527, 285 P.2d at 1068.

In Yearsley v. Yearsley, *supra,* a father petitioned for the modification of a divorce decree to change custody of his minor daughter to himself. This Court held that the district court was correct in leaving custody of the child with people with whom the child had lived happily for seven years. Relying heavily upon the holding in *Altmiller,* the finding was based upon evidence received in hearing and a report from the Department of Public Assistance.

In the case at bar, the trial court considered psychological examinations of Leroy Gordon, Terrence Ewing and Charles Joseph Ewing conducted by Kent Pilling, Psychologist, and concurred in by William H. Cone, Psychiatrist. The reports found that the welfare and best interests of each

---

9. I.C. § 16–1625(i). *See also* Clark v. Jelenik, *supra.*

10. Blankenship v. Brookshier, *supra*; Application of Altmiller, *supra.*

11. Clark v. Jelenik, *supra.*

child required that custody remain with Leroy Gordon.

■ We are in agreement with the trial court in its finding of best interests. The record clearly shows that respondent Leroy Gordon has supported the children since the date of his marriage, May 15, 1971, to Gaitha (Ewing) Gordon and that he loves them. The evidence further shows that the two children have a strong affection for respondent Leroy Gordon and for their half-brother Leroy Gordon II. All of this, coupled with the fact the children have been living in his custody as a family unit in excess of three years, dictates that their best interests will be served by leaving them with the respondent. Charles Joseph Ewing and Mary Lisa Ewing are currently living within the security and environment of a good home. These conditions should be allowed to continue and the children must not be forced to leave their half-brother and move into a strange environment by tearing them away from the people with whom they have grown up.

We have considered appellant's other arguments and find them to be without merit.

Judgment affirmed. Costs to respondent.

McQUADE, J., concurs.

BAKES, Justice (concurring specially):

I concur in that portion of the opinion of Justice Donaldson concerning the trial court's finding that it is in the best interests of the children to remain with Leroy Gordon, and therefore concur in the affirmance of the judgment of the trial court.

SHEPARD, Chief Justice (dissenting).

I am compelled to dissent not only by reason of the result obtained in the instant case but also by reason of certain language contained in the majority opinion, which in my opinion injects new criteria into an area of law which prior to this case has at best been confusing, complex, contradictory from decision to decision and which furnishes no guide to the courts, lawyers or the people of this state.

Cases which present demands for custody of children are at best difficult when presented in the context of a divorce action with each of the parties demanding custody possessing natural parent status. When such custodial demands are between one party as a natural parent and the other a non-parent I suggest that the decisions are demonstrably result oriented.

One would believe that the statutes would give considerable guidance if not absolute direction in this field. I.C. § 32–1007 provides:

"The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings. If either the father or mother be dead or be unable or refuse to take the custody or has abandoned his or her family, the other is entitled to the child's custody, services and earnings."

I.C. § 15–1805 prior to the adoption of the Uniform Probate Code provided:

"Either the father or mother of a minor, being themselves respectively competent to transact their own business, and not otherwise unsuitable must be entitled to the guardianship of the minor."

Provisions of the Uniform Probate Code, § 15–5–104 et seq. would appear to indicate the continued vitality of a parent's right to guardianship although not expressly set forth therein.

It is apparent, however, that the court, in recent years at least, has done little but pay lip service to the statutes and have decided disputes between natural parents and others over custody of a child on the basis of one and/or more criteria such as abandonment of the child by the natural parent; fitness or lack thereof of a natural parent to have custody of a child; the best interests and welfare of a child; which of the contending parties might provide a better home for the child; the length of time that a child has been with the non-parent

party and the capacity of the parent to understand the result of action resulting in relinquishment and/or abandonment. Those criteria have been changed, ignored or finessed almost yearly.

I suggest that a review of only a few of the more recent cases disclose the oft contradictory opinions of this Court. In Nelson v. Standefer, 87 Idaho 83, 390 P.2d 838 (1964) the court had little difficulty in affirming a trial court's award of the custody of a minor child to the maternal grandparents over the claim of the natural mother of a child. The court said therein:

> "As a general rule, parents have a natural and legal right to the custody of their minor children. When such relationship is established a prima facie case has been made and the burden is then upon the other party to overcome such prima facie case by showing that the natural parent or parents *have forfeited such right,* or at least that such parent or parents *are not fit and proper persons to have custody."* (Emphasis supplied)

The court therein affirmed the finding of the trial court that the mother of the child was not a fit or proper person to have custody on the basis of her repeated immorality, her neglect of the child's physical well-being and acts of cruelty toward the child by the stepfather.

Just short years before, the court in Application of Altmiller, 76 Idaho 521, 285 P.2d 1064 (1955), had reversed a trial court determination and awarded custody to a grandmother over the protests of the natural parent of the child. The court therein affirmed the finding of the trial court that there had been no abandonment of the child by its father and stated:

> "Non-support and abandonment are not synonymous. Non-support, in and of itself, does not constitute abandonment."

The court also affirmed the finding of the trial court that the father was a fit and proper person to have custody of his child stating:

> "Although it is undisputed that the respondent is morally a fit and proper person to have the care, custody and control of his minor daughter, Nancy, it is disputed whether or not he has a suitable and proper place to care for and educate her." 76 Idaho at 525, 285 P.2d at 1067.

\* \* \* \* \* \*

> "While under the record both parties to this action are fit and proper persons to have custody of the child, *material advantages are presented for the child* to remain where she is, and in our opinion she will be reared, trained and cared for best by a woman—in this case the appellant—rather than the father, as he is unable to properly care for a young girl." (Emphasis supplied) 76 Idaho at 527, 285 P.2d at 1068.

The child in that case was eleven years old at the time of the decision and had lived with her grandmother since she was four years old.

In 1961 in Freund v. English, 83 Idaho 140, 358 P.2d 1038 (1961), the court affirmed the decision of the trial court awarding the custody of the child to the natural father over the claims of the grandparents who had had the custody of the seven year old child since he was two. The court therein relied upon the statute stating:

> "The right of a parent to the care, custody and control of his child is a natural right and the law applicable in proceedings of this nature is well settled in this state." Citing I.C. § 32–1007. 83 Idaho at 144–145, 358 P.2d at 1041.

\* \* \* \* \* \*

> "Although the welfare of the child controls over the general right created by laws of this character, in a proceeding to obtain custody of a child from a natural parent, the burden is upon the party seeking such custody *to prove abandonment* or *a forfeiture of the parent's right or that the parent is unfit or unable to properly care for the child."* (Emphasis supplied) 83 Idaho at 145, 358 P.2d at 1041.

In 1965 in Spaulding v. Childrens' Home Finding and Aid Society, 89 Idaho 10, 402

P.2d 52, the court citing I.C. § 32–1007 and I.C. § 15–1805, returned a child to its natural parent stating "[i]f the parent is competent to transact his or her own business, and is not otherwise unsuitable, the custody of the child is not to be given to another, *even though such other may be a more suitable person.*"

In 1966, the court in Clark v. Jelinek, 90 Idaho 592, 414 P.2d 892, over a strong dissent, awarded the custody of the children to a stepfather rather than the natural father of the children. Although not expressly disclosed by the opinion it is apparent that the children were not more than five years old at the time of the initiation of the writ of habeas corpus by their father and had lived with their mother and stepfather two years prior to the death of their mother. The court noted the statutes indicating that natural parents have the absolute legal right to the custody of their minor children but noted that:

"[T]he prima facie right of the parent to custody may be defeated by competent proof that the natural parent has forfeited or abandoned his right or that the parent is not a fit and proper person to have custody of the child."

Although the dissent vociferously disagreed, the majority opinion found that the natural father had abandoned his child primarily because he had not paid support for nine months. (The dissent contended that the father had no knowledge of the whereabouts of the family and therefore was unable to pay the child support.)

In 1966 a unanimous court decided the case of Blankenship v. Brookshier, 91 Idaho 317, 420 P.2d 800. The subject of that proceeding was a minor child ten years of age who had lived practically all of his life with his grandparents. The natural father had paid $35 per month in child support payments during the first four years of the child's life but thereafter had made no payments. The court recognized and cited the hereinabove noted legislation and stated:

"After respondent established a prima facie case, [that he was the natural parent] the burden shifted to appellants to prove that respondent *forfeited* his parental rights by *abandonment,* or that he was *unfit* or *unable properly to care for the child.*

\* \* \* \* \* \*

"Respondent's continuing interest in his son's welfare demonstrates that at no time did he intend to abandon or desert his child to appellants' custody."

It was stipulated that the grandparents were fit and proper competent people to have the custody of the child should the court grant them that right. On the other hand, the father had been involved in minor criminal proceedings, was a seasonally employed logger, drawing three months unemployment compensation each year, who with his wife and their five children lived in a 2-bedroom former lumber yard office. The court however dealt with that problem by stating:

"The court is concerned with the fitness of the natural parent at the time of the hearing as it relates to the welfare of the child. If the parent is, at the time the question arises, a suitable person to have custody of the child, the court will not deny custody merely because at some time in the past the parent's conduct indicated a lack of integrity or responsibility." 91 Idaho at 321, 420 P.2d at 804.

In 1971 the court in the case of Duncan v. Davis, 94 Idaho 205, 485 P.2d 603, in effect, reclaimed a child from foster and prospective adoptive parents and awarded the child to the natural mother. Therein the court affirmed the decision of the trial court finding that when the natural mother of the child had relinquished it for adoption she was not aware of the consequences flowing from that action. In the context of this case, Duncan v. Davis, *supra*, is perhaps only interesting in that nowhere therein did that court discuss any of the criteria regarding fitness of the parties, welfare of the child, or abandonment.

I come now to what in my judgment is the most peculiar of all of the opinions of the court heretofore reviewed, that of Yearsley

v. Yearsley, 94 Idaho 667, 496 P.2d 666, issued in 1972, shortly after Duncan v. Davis. Therein the mother and father were divorced in 1964 when the child was one year old. Although the mother was initially granted custody of the child, shortly thereafter the father obtained custody which was confirmed by the court. The father was employed in a job that took him away from home and at that time he also had severe economic problems. He therefore placed the child with friends (Butlers) and that arrangement was confirmed by the court in 1966. The court also held at that time that neither of the natural parents were fit to have custody. The child remained with the Butlers until 1970 at which point the father brought proceedings seeking the custody of his child and alleging changed conditions since the court action of 1966. A hearing was held at which no party appeared except the father. Nevertheless, the trial court requested a recommendation from the Department of Public Assistance, which agency recommended that the child be left with the Butlers, albeit the report was also favorable to the father. The trial court in essence adopted the recommendation of the agency and denied the petition of the father. When the matter was heard before this court it was in the nature of a default matter with only the father appearing.

Given such a bizarre setting, it is perhaps to be understood that the opinion of this court was, to say the least, unusual in view of earlier cases discussed herein. The decision of the majority again paid lip service to the statute, I.C. § 32–1007 and also paid lip service to the earlier cases stating:

> "The general rule in Idaho is that in normal situations, the natural parents are entitled to custody of the child unless it is affirmatively shown that the parent has abandoned the child or that he is unsuitable.
>
> \* \* \* \* \* \*
>
> "However, this right is not absolute and is qualified. In an action such as the one at bar, the general rule will be followed unless it is affirmatively shown that both parents are *unfit to have custody,* or that *they are unable to properly maintain the child and provide for proper training and education."* (Emphasis supplied) 94 Idaho at 669, 496 P.2d at 668.

The court thereafter proceeded to base its decision on Application of Altmiller, *supra,* stating:

> "In cases of this nature, three *rights* of interest are to be considered: First, that of the parents; *second, that of the person who has for years discharged all the obligations of the parents;* third, and chiefly, that of the child." (Emphasis supplied) 76 Idaho at 526, 285 P.2d at 1067.
>
> \* \* \* \* \* \*
>
> "It is far better for a child of innocent years to live among the people and with the attachments formed in childhood than to be torn away from familiar scenes, friendly faces and kindly voices, to be cast into a strange environment." 76 Idaho at 527, 285 P.2d at 1068.

The court in further discussing *Altmiller* said:

> "This Court went on to hold that while on the record both parties were fit and proper persons to have custody of the child, the party who had been in custody for almost seven years was *better fitted* to have custody of the young girl than was the father. Therefore, we cannot say that the district court acted improperly in leaving the custody of the child with the Butlers."

I suggest that there is no way in which *Yearsley* can be rationalized nor harmonized with the prior decisions of this court however confusing, complex, and contradictory they may be. The majority decision in *Yearsley* appears to have ignored rights created by statute and also those criteria for determination of rights laid down in the previous cases excepting only that of *Altmiller.* I suggest that indulgence in phrases such as "child of innocent years"

"attachments formed in childhood" and "familiar scenes, friendly faces and kindly voices" do little but obfuscate the problem of a *right* of a natural parent to the custody of his child if he has not abandoned it and is otherwise a fit and proper person. The prospect of this or any other court sitting in omniscient judgment is frightening when it involves taking a child from a parent otherwise fit and proper to have custody and awarding it to another on the basis that the other can *better* provide for the child. To further confound the confusion let me add that in *Altmiller* the grandmother of the child was awarded the custody on the basis that she as a woman was naturally better fitted than the father, while in *Yearsley* the court had no hesitation in stating that the grandmother with whom the child would live along with her father was at 67 too old to share the custodial duties over a female child.

*Yearsley* becomes even more difficult to understand when the case of Pullman v. Klingenberg, 95 Idaho 424, 510 P.2d 488, decided by the court one year later is considered. *Klingenberg* involved the claim by a maternal aunt for the custody of three children aged 14 to 12 as against the claims of the natural father. The children had lived with the aunt for approximately four years and then by court order were required to live with their father for approximately five years. The children joined in the petition of the aunt. That petition of the aunt was denied by the trial court and affirmed by this court upon appeal. Both the father and the aunt were fit and proper persons to have custody of the children. The interesting aspect of *Pullman* is not only the brevity of the opinion but the fact that the court therein relied upon the statutes and cases such as *Blankenship, Standefer, Freund,* and others. Strangely missing from the court's authorities, however, are Application of Altmiller, and *Yearsley*.

Mercifully this discussion [or tirade, depending upon your point of view] draws to a close. I believe it is past time for this court to face up to the difficult problems which confront it in this particular field of law and lay down criteria for the guidance of the trial courts, the lawyers and the people of this state. The case at bar is demonstrative of the impossibility of reconciling previous decisions of the court and whether the statutes of the state have any controlling influence or whether they are to be merely cited and thereafter ignored.

Belatedly, perhaps, I suggest that the finding of the trial court as to abandonment in the instant case is not supported by the facts. As previously mentioned in many of the cases the fact of non-payment of support by a natural parent is not in and of itself determinative of legal abandonment or an intent to abandon. I do not find it difficult to conceive that a father of children would be highly upset and emotionally distraught knowing that his children were living in a household with his ex-wife and her paramour. While the non-payment of child support under such circumstances undoubtedly constituted contempt and disobedience of the divorce decree, nevertheless I deem it understandable and not in and of itself a conclusive demonstration of abandonment or intent to abandon his children. I would reverse.