262 P.2d 116

**MOSS v. VEST et al.**

No. 7987.

Supreme Court of Idaho.

Oct. 12, 1953.

P. A. McDermott, Pocatello, for appellant.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for respondents.

THOMAS, Justice.

The petitioner, Nina Moss, instituted habeas corpus proceedings to obtain the custody of Gary Lee Moss, her minor son, from Farrell Vest and Joyce Vest, husband and wife, respondents.

At the conclusion of the hearing the court found that petitioner had neglected and failed to properly care for, and had abandoned and deserted her minor son on October 25, 1951, and had given custody to his maternal grandmother, Fay Baker, who had thereafter and on November 21, 1951, with the consent of William E. Baker, the maternal grandfather, delivered the custody of said minor child to respondents. The court further found that petitioner was unfit by reason of neglect, indifference to the welfare of said child, and immoral conduct, to exercise her natural rights of custody over him, and decreed that said child be remanded to the custody of respondents.

Petitioner urges on appeal that the evidence is insufficient to sustain a finding of abandonment and desertion, or that she was an unfit mother to have the custody of the child, or that she had neglected and failed to properly care for him.

While the evidence adduced at the hearing was rather voluminous and in some respects in sharp conflict, it is deemed appropriate, in so far as it is material, to relate it in substantial detail.

Petitioner, Nina Moss, is the natural mother of Gary Lee Moss who was born at Kirkland, Washington, on July 20, 1951, to petitioner and Lonnie Moss who was at that time her husband. While they were living in Pocatello, Idaho, and on April 16, 1950, their daughter, Christina Fay, was born.

Soon after the birth of Gary Lee on July 20, 1951, petitioner and her husband who lived at Redmond, Washington, had trouble and apparently were unable to get along; this was due in part to the lack of employment of Mr. Moss and the absence of adequate funds to provide the necessities of life for the family and apparently the excessive indulgence in intoxicating liquors. Somewhere on or about the 13th of October, 1951, petitioner and her husband separated, she remaining with her two children at the motor court where they had all lived and the husband moving to a hotel in the town. Thereafter and on or near October 25, 1951, the father of the minor child, at the request of the mother, communicated their marital difficulties by telephone to the maternal grandparents at Pocatello, Idaho. The grandmother immediately went to Redmond, Washington, where she remained a few days and, on leaving to return to her home in Pocatello, took both minor children with her; this action on her part was known to both the mother and father of the children who voiced no disapproval; however, the petitioner did not return to Pocatello with her mother, stating she was nervous and upset and wanted to be alone for awhile. Thereafter, and in the course of

about a week, petitioner left Redmond, Washington, for San Francisco, California, and enroute and while at the railroad station in Portland, Oregon, called her mother to make inquiry as to the children and then proceeded to California. From the time she arrived in California which would be on or near November 1, 1951, until late in the month of February, 1952, she had not been in contact with her parents either through the mails or by telephone and they did not know where she was.

After the maternal grandmother returned to Pocatello with the children she became ill and with the consent of her husband, the maternal grandfather of Gary Lee, delivered his custody to the respondents who resided in Idaho Falls, Idaho. Apparently from the record it would indicate that the grandparents and respondents were looking forward to respondents effectuating adoption of the child; this tentative arrangement was without the knowledge or consent of petitioner.

On February 28, 1952, an information was filed against petitioner while she was residing in San Francisco, charging her with a felony, that is, a violation of Section 288a of the Penal Code of California. She was neither tried nor convicted of such offense; on March 24, 1952, petitioner entered a plea of guilty to an included offense, a misdemeanor under the Municipal Police Code of San Francisco which prohibited engaging in, or soliciting others to engage in or being a party to any lewd, indecent or obscene act or conduct; on the same day she was placed on parole to her mother for one year and the parole was in full force and effect at the time of the hearing. During the time she was in jail in San Francisco, but not earlier, she and her parents corresponded two or three times a week. During this time she mailed a little picture of the boy to her parents and they mailed pictures of both children to her.

Mrs. Baker first found out her daughter was in jail about March 9, 1952, and on or about the 27th of March of the same year she went down and brought her back to her parents' home in Pocatello, Idaho, where she has at all times since resided.

Petitioner found out for the first time when her mother came to San Francisco that her son had been placed in the home of third parties but her mother did not then nor at any time thereafter, even though petitioner repeatedly made inquiry, advise her with whom her baby had been placed; in this respect it appears her mother was following the advice of another attorney who was handling the pending adoption proceedings that it would be best if Nina did not know who had custody of the child while the adoption proceedings were pending.

Soon after petitioner returned to Pocatello to live with her parents and her little daughter she enrolled in nightschool for the purpose of taking a business course; she continued her schooling for some time but did not complete the course; she was

for a greater portion of the time prior to these proceedings employed in several places of business in Pocatello. The record does not disclose with any certainty that her work while so employed was not satisfactory; however, it appears that she lost at least one job because respondents had visited her employer and cast a doubt upon her character. At the time of the hearing she was not employed.

Sometime after her return to Pocatello, the time being uncertain, she filed an action for divorce; in the action she employed the attorney who was also representing respondents in the adoption proceedings; she was granted a divorce on September 9, 1952, upon substituted service and the court awarded her custody of her two children as against the father whose whereabouts were unknown and who had never made any inquiry about the children; a few days before the decree was entered, through an inadvertent statement made by her attorney, she learned for the first time the names of the parties who had her child. Thereafter, and on the 18th day of September, 1952, the petition for writ of habeas corpus was filed and the hearing thereon was commenced October 3, 1952, and continued to January 12, 1953, when the hearing was completed.

As a general rule, parents have a natural and legal right to the custody of their minor children. When such relationship is established a prima facie case has been made and the burden is then upon the other party to overcome such prima facie case by showing that the natural parent or parents have forfeited such right, or at least that such parent or parents are not fit and proper persons to have custody. Schiller v. Douglas, 48 Idaho 803, 285 P. 1021; Jain v. Priest, 30 Idaho 273, 164 P. 364; In re Crocheron's Estate, 16 Idaho 441, 101 P. 741, 33 L.R.A.,N.S., 868; Andrino v. Yates, 12 Idaho 618, 87 P. 787; Sec. 15-1805, I.C.; 67 C.J.S., Parent and Child, §§. 11(a), 11(c), and 13(f), pp. 634, 640, and 673.

The trial court found that petitioner abandoned and deserted her minor son on October 25, 1951, by giving up her custody to the maternal grandmother. With this finding, under all the facts and circumstances, we cannot agree. The facts will not demonstrate nor support abandonment or desertion. It was only natural and for the best interests of the minor children for the mother, in her hours of extreme trouble, to look to her own parents for aid and assistance with respect to the welfare of her children. Both she and her husband were very young; she was immature, unstable and emotionally upset; she was a victim of youth, inexperience and economic hardships; their marital difficulties after the birth of the little boy intensified; the father had no regular and permanent employment; he indulged excessively in the use of intoxicating liquor; he failed to properly support his family; they separated, contemplating a divorce and he moved to a hotel, leaving

334

this young mother with two babies and no funds to provide them with even the bare necessities. Certainly a mother whose husband had left her under such circumstances and had remarked to the maternal grandmother that he did not give a damn what was done with the children, did not desert and abandon her children when she placed them in the care of her own parents whom she knew had a good home and were able to properly provide for them. Her decision in this respect was natural and proper; she committed no wrong when she placed them with her parents who had no authority to relinquish her parental claim to anyone.

 That she did not relinquish the children nor give them up with the intent of never again resuming or claiming her parental right and performing her parental duty toward them is forcibly demonstrated by her actions and conduct after she returned to Pocatello; while it is true that she did not make inquiry about them for a period of some four months while she was in California, nor give any explanation for her failure so to do, she did have every reason to believe they were in the custody of her parents and were being well provided for; her apparent absence of solicitude for her children for some four months is regrettable and must be condemned; however, such action when considered together with all the material facts does disclose that she never, at any time, intended to entirely forsake, utterly renounce and abso-

lutely give them up and evince a settled purpose to forever forego her parental duties and relinquish all parental claims to her children. There can be no abandonment without a specific intent to sever all correlative rights and duties incident to the relationship of parent and child. The evidence must be but, in this case, is far from clear, satisfactory, decisive or convincing that she intended to abandon and desert the children at the time the custody was given to her mother or at any time thereafter. Smith v. Smith, 67 Idaho 349, 180 P.2d 853; Finn v. Rees, 65 Idaho 181, 141 P.2d 976; In re Adoption of Walton, Utah, 259 P.2d 881; In re Adoption of Strauser, Wyo., 196 P.2d 862; In re Kerns' Guardianship, Cal.App., 169 P.2d 975, 978; In re Snowball's Estate, 156 Cal. 240, 104 P. 444, 446; In re Baldwin's Guardianship, 130 Or. 206, 278 P. 1078.

 We agree with petitioner that the evidence is insufficient to support the finding of the lower court that she neglected and failed to properly care for said minor child. It would unduly extend this opinion to again review the evidence in this respect.

The finding is general. It may have been intended to cover the time commencing with the birth of the child on July 20, 1951, to October 25, 1951, when he was taken to Pocatello by the maternal grandmother. If so intended, the evidence will not support the finding. All the evidence adduced, covering this period, with the exception of the time elapsing between the date the father

and mother separated and the date the grandmother arrived at Redmond, Washington, discloses that she was a good mother and did not neglect or fail to properly provide for her children; there is no evidence to the contrary; the father left the home on or about October 13, 1951, and the grandmother arrived on or about October 25, 1951, hence only for a period of some twelve days at most did the mother neglect her children; during this period of time she was emotionally upset and did on some occasions leave the children without providing adequate care and attention; but they were not in anywise harmed as neighbors in close proximity to their motel took care of them, though at times without arrangement being made; this, without more, does not constitute such neglect and failure of care as would support a judgment denying the mother the parental right to their custody. On the other hand, if the finding is intended to also cover the period of time elapsing after they were taken to Pocatello by the grandmother, such is not supported by the evidence.

▉ The children were entrusted to the care of the maternal grandmother under a mutual voluntary and satisfactory arrangement. It is not merely a question of whether the child was cared for and supported by its mother or by another through a voluntary arrangement. It is rather a question of whether the mother intentionally failed in her parental obligation to the child through neglect. Where the mother fails to support and care for her minor child because of poverty or other misfortune, not directly occasioned by her wilful acts or omissions, she should not on such account be deprived of her parental right of custody and control. Surely there is nothing wrong, legally or morally, with respect to the conduct of a parent who voluntarily makes arrangements for the support, care and attention of his or her minor child by its grandparents or other relatives or friends. Merely to consent to the voluntary custody and support by the grandparents does not constitute neglect or failure to support such child. Making such arrangements here demonstrates the interest the mother had in her children; when made, under the circumstances of the moment, it was for the best interests of the children and perhaps all concerned. It does not constitute neglect or failure to provide and cannot be the basis of depriving this mother of her parental right. Smith v. Smith, 67 Idaho 349, 180 P.2d 853; In re Kerns' Guardianship, Cal.App., 169 P.2d 975; In re Adoption of Strauser, Wyo., 196 P.2d 862; In re Kelly, 25 Cal.App. 651, 145 P. 156.

It is finally urged that the evidence will not support the finding made by the trial court that petitioner is unfit by reason of immoral conduct to exercise her natural right of custody of said child.

▉ Whether the petitioner as mother of the child is the proper person to have the custody is controlled by a determination of

her fitness at the time of the hearing as it relates to the welfare of the child. Newman v. Newman, 109 Cal.App.2d 359, 240 P. 2d 682; Sorrels v. Sorrels, 105 Cal.2d 465, 234 P.2d 103.

■ As a general rule where a parent seeking the custody of a child is guilty of immoral conduct of such a gross character that the welfare of the child might be endangered in awarding such custody, it will be denied to the parent until at least such time as the parent has reformed to an extent sufficient to remove the danger to the best welfare of the child. 67 C.J.S., Parent and Child, § 12, p. 661.

There is uncontroverted evidence in the record and the court found thereon that petitioner on March 24, 1952, pleaded guilty of violation of the Municipal Police Code of San Francisco which makes it a misdemeanor to engage in, or solicit others to engage in, or be a party to any lewd, indecent or obscene act or conduct and that petitioner was placed on parole to her mother for one year.

Such conduct was evil in itself and involves moral turpitude. While the parole was in full force and effect and in less than six months after pleading guilty to the offense charged, she initiated the habeas corpus proceedings seeking custody of her minor son. At that time she was under the restraint of the parole and would be until the month of March, 1953, which was some two months beyond the date the hearing was concluded.

■ She predicated her claim of right on parenthood which carries with it a presumption of fitness as of the time of the hearing. A parent who is at the time the question arises a suitable and competent person to have the custody of the child will not be refused custody simply because at sometime in the past her conduct was such that she would not then have been a proper person to have custody of the child.

■ Whether sufficient time had elapsed to test the completeness of her reformation, if any, or whether she was impelled under the restraint of the parole to temporarily abandon her immoral behavior was for the trial court to determine, 67 C.J.S., Parent and Child, § 12, p. 662, notes 43–44; it appears from the record that the trial court did not believe that sufficient time under all the facts and circumstances had elapsed to adequately test the moral reformation of petitioner at the time of the hearing.

The real problem of the trial court guided in its discretion by the welfare of the child as of that time was to determine whether the petitioner in the short period of six months had repented, reformed and was sufficiently rehabilitated to a point where she was then a fit and proper person to have the custody of her child. The court found that she had not so reformed and rehabilitated herself.

■ The finding of the trial court that petitioner ws unfit to have the custody of her minor child by reason of immoral con-

duct is amply supported by the record as is its finding that respondents are fit and proper persons to have such custody.

It is a settled rule of this court that findings of the trial court, supported by substantial competent evidence, will not be disturbed on appeal. This rule applies to habeas corpus proceedings of a civil nature to determine the right to the custody of a child. Jain v. Priest, 30 Idaho 273, 164 P. 364; Finn v. Rees, 65 Idaho 181, 141 P.2d 976.

We conclude that awarding custody of said minor child to respondents cannot be supported on the ground that petitioner had abandoned and deserted the child nor on the ground that petitioner neglected and failed to properly care for said child nor that she was indifferent to its welfare.

The best interest of the child is paramount and in making such determination it is necessary to take into consideration all the surrounding facts and circumstances, including petitioner's previous immoral conduct not too remote in time from the date of the hearing, which may have any bearing on the matter. We are satisfied the lower court correctly found petitioner unfit at the time of the hearing by reason of immoral conduct and that the welfare of the child requires that it remain in the custody of respondents.

The basis upon which we affirm the judgment, and the only basis, is that petitioner as of the time of the hearing was not a fit and proper person to have custody of her child for the time being because of her immoral conduct.

Affirming the judgment awarding custody to respondents on the ground of moral unfitness of petitioner does not necessarily mean that petitioner will be forever precluded from obtaining custody of her minor son. Such custody may be restored to her when she has repented and reformed and is otherwise shown to be a fit and proper person to have the custody. Goldson v. Goldson, 192 Or. 611, 236 P.2d 314; 17 Am. Jur., sec. 684, p. 518; 39 Am.Jur., secs. 25 & 26, pp. 615 & 616.

Affirmed. Costs to respondents.

PORTER, C. J., and TAYLOR, J., concur.

GIVENS, J., concurs in the conclusion reached.

KEETON, Justice.

I concur in the conclusion reached that the judgment should be affirmed. However, I think the record fully supports the trial court's conclusion that the mother (appellant) was not only wholly unfit to have the child's custody, but also that she had abandoned him. I further think the best interest of the child would be promoted by permanently depriving the mother of his custody and awarding him to the respondents, permitting them, if they see fit, to adopt him.