420 P.2d 800

Gale BLANKENSHIP, Plaintiff-Respondent,

v.

Ernest L. BROOKSHIER and Laura Alice Brookshier, Defendants-Appellants.

In the Matter of the Application of Gale Blankenship for a Writ of Habeas Corpus in and on behalf of David Laurence Blankenship, a minor child.

No. 9841.

Supreme Court of Idaho.

Nov. 29, 1966.

William J. Dee and William B. Taylor, Jr., Grangeville, for appellants.

W. C. MacGregor, Jr., Grangeville, for respondent.

SMITH, Justice.

This is a habeas corpus proceeding, commenced by respondent, the natural father of David Laurence Blankenship, a male minor child, 10 years of age, to obtain custody of the child from appellants, the child's maternal grandparents. At the conclusion of a hearing the trial court entered judgment sustaining and adjudging permanent a writ of habeas corpus theretofore issued and awarded custody of the minor to respondent father.

Appellants have appealed from the judgment. Essentially, their assignments of error question the sufficiency of the evidence to sustain the findings and judgment.

Respondent married appellants' daughter, Pearl Brookshier, on August 7, 1955. Their marital relationship was tempestuous, and after six days, Pearl left her husband and returned to her parents' home. In November 1955, Pearl obtained a divorce. The terms of the divorce decree directed respondent to pay $100 monthly support to Pearl, who was then pregnant, until one month after the birth of the child. When respondent failed to comply with the decree, the court issued an order directing him to show cause why he should not be held in contempt. Respondent testified that, as a result of the contempt proceedings, he agreed to pay Pearl whatever he could afford, which amounted to $250 until the child was born March 30, 1956. Respondent also paid the hospital and medical bills incurred during Pearl's pregnancy.

After David's birth Pearl and her son lived with appellants in Grangeville. Pearl returned to high school and worked parttime during the next four years. Appellants cared for David during their daughter's school or working hours. In the spring of 1960 Pearl married Bruce Wallace and bore her second child, Bruce Wallace, Jr. Pearl, Wallace, and the two children moved to Massachusetts in November 1962, but within two months Pearl, alone and divorced, returned with her children to appellants' home.

David remained with his mother and half-brother in appellants' home until December 1962 when Pearl married Gene Mager. Pearl moved to a trailer court with her new husband, leaving the two boys with appellants. Not until July 1963 did David reside with his mother, but even then Pearl's recurrent poor health compelled the return of David to appellants' home. In 1965 David briefly resided with his mother, until Pearl gave birth to her third child, Michele Mager, in April of that year.

The ensuing summer Pearl and her husband, accompanied by David, moved to New Meadows. There, on November 14, 1965, Pearl died. Appellants again took David into their home.

During Pearl's lifetime, respondent maintained a continuing interest in the welfare of his son. The evidence shows that respondent visited Pearl and the infant soon after his birth; that respondent frequently visited David while he was in either appellants' or Pearl's care, and that David, on several occasions, visited respondent at his home.

Respondent testified that he paid $35 per month in support payments until April 1960, when Pearl married Bruce Wallace. According to respondent, Pearl stated that "as long as she was married, she wouldn't need the money, and [respondent] wouldn't have to pay it." After divorcing Wallace, Pearl remained single for ten months, living with her two children. During that interval, respondent neither paid nor offered to pay any support to Pearl, nor did Pearl request any support money. After Mager married Pearl, Mager not only volunteered to support the two children, but declined to accept support money from respondent.

Respondent served in the United States Army during the Korean War. Upon his return to civilian life, he was implicated in minor criminal proceedings. In 1956, apparently while intoxicated, he created a disturbance at a restaurant where Pearl worked, but the charges growing out of that incident were dropped. In February 1957, he was charged with reckless driving. Finally, in July 1957, he was charged and convicted of petit larceny for stealing gasoline from a parked vehicle for which offense the court imposed, and then suspended, a three-month jail sentence.

Respondent's primary source of income is from his work as a logger. The trial court found that he averages nine months' work each year and earns a gross average of $162 a week. For approximately three months each year, due to the seasonal nature of employment in the logging industry, he is unable to find work and draws unemployment compensation.

After respondent's divorce from Pearl, he married his present wife, Deanna, in August 1957. Respondent and Deanna, whose ages are thirty-one and twenty-six years respectively, have five children of their own, ranging in age from one to seven years.

Early in respondent's second marriage respondent commenced divorce proceedings against Deanna. A separation agreement followed. Respondent and Deanna lived apart for two weeks and then became reconciled. Since that time, the two have enjoyed a harmonious marital relationship. Their children receive religious training from their mother and have frequent family picnics and outings.

Respondent, his wife, and their five children live in an enlarged and converted former lumber yard office. The structure presently has two bedrooms, but respondent intends to add two additional bedrooms which will double the size of the accommodations.

Appellants, at the time of the hearing, were fifty-five years of age. They have been married thirty-seven years and have reared four children. They own a three-bedroom home in Grangeville. They presently care for David's half-brother, Bruce Wallace, Jr. The parties stipulated that appellants were fit and competent people to have custody of David should the court grant them that right.

■ The best interests of a child being of paramount importance, the court will consider myriad factors bearing upon the child's welfare, including the child's age and sex, its prior custody and all other circumstances affecting its future well-being. In Nelson v. Standefer, 87 Idaho 83, 90, 390 P.2d 838, 841 (1964), the court stated that "The child's welfare as a normal human being and future citizen is the polar star by which the court must be guided in awarding its custody." See also Freund v. English, 83 Idaho 140, 358 P.2d 1038 (1961); Application of Altmiller, 76 Idaho 521, 285 P.2d 1064 (1955); Roosma v. Moots, 62 Idaho 450, 112 P.2d 1000 (1941).

■ The jurisdiction of the trial court to determine child custody under a writ of habeas corpus is of an equitable nature, and the court is given large discretion in the matter. Application of Altmiller, supra; Andrino v. Yates, 12 Idaho 618, 87 P. 787 (1906). This is not to say, however, that each habeas corpus proceeding is decided simply by weighing the plaintiff's parental merits against those of the defendant. The

legislature and courts of this state have recognized that a parent has a natural right to the care, custody and control of his child against other lineal or collateral relatives. Freund v. English, supra, 83 Idaho at 144, 358 P.2d at 1041; Moss v. Vest, 74 Idaho 328, 333, 262 P.2d 116, 119 (1953). A parent's entitlement to custody of the child is recognized by I.C. § 32–1007, which provides that " * * * If either the father or mother be dead * * * the other is entitled to the child's custody, services and earnings"; and by I.C. § 15–1805, which provides that "Either the father or the mother of a minor, being themselves respectively competent to transact their own business, and not otherwise unsuitable, must be entitled to the guardianship of the minor."

■■ Appellants contend that the trial court erroneously denied appellants' motion to dismiss because, as appellants argue, respondent failed to establish a prima facie case entitling respondent to custody of his child. A party to a custody proceeding makes a prima facie case merely by showing that he is a natural parent of the child. Nelson v. Standefer, supra; Moss v. Vest, supra; Schiller v. Douglas, 48 Idaho 803, 285 P. 1021 (1930). Respondent testified that he is the natural father of David Laurence Blankenship, and the trial court therefore properly denied appellants' motion to dismiss respondent's petition.

■ After respondent established a prima facie case, the burden shifted to appellants to prove that respondent forfeited his parental rights by abandonment, or that he was unfit or unable properly to care for the child. Nelson v. Standefer, supra; Freund v. English, supra; Application of Altmiller, supra; Moss v. Vest, supra.

■ The trial court concluded that the evidence failed to establish abandonment of the child by respondent, or his unfitness to have the child's custody. The record amply supports such conclusion. Respondent's continuing interest in his son's welfare demonstrates that at no time did he intend to abandon or desert his child to appellants' custody. See Application of Altmiller, supra; Moss v. Vest, supra.

■ During the mother's lifetime, respondent assented to the child being tended by the mother and appellants. Respondent's attitude, in that respect, was natural and commendable in light of the child's need for maternal care during infancy, and the court properly declined to infer from that conduct any intent permanently to relinquish David's custody to appellants. See Moss v. Vest, supra. Nor could respondent's alleged non-payment of support at times compel a finding that respondent abandoned the child. Nonsupport in and of itself does not constitute abandonment. Application of Altmiller, supra; Smith v. Smith, 67 Idaho 349, 180 P.2d 853 (1947).

Appellants principally contend that the trial court's finding of respondent's fitness and suitability for custody is not supported by sufficient, competent evidence.

The evidence is undisputed that respondent had, prior to 1961, committed certain minor criminal offenses, had mistreated Pearl during their marriage, and had early marital difficulties with his present wife, Deanna. Apellants, however, were unable to produce any substantial evidence that such erratic conduct continued during the five years prior to the child custody proceeding. On the contrary, the evidence pertaining to such period convincingly shows that respondent leads a stable, temperate married life; that respondent and his wife devote considerable time to their children, and that respondent is actively proceeding to create a commodious home environment for his son, David.

■ The court is concerned with the fitness of the natural parent at the time of the hearing as it relates to the welfare of the child. If the parent is, at the time the question arises, a suitable person to have custody of the child, the court will not deny custody merely because at some time in the past the parent's conduct indicated a lack of integrity or responsibility.

**322**

Nelson v. Standefer, supra; Moss v. Vest, supra; 67 C.J.S. Parent and Child § 12, p. 662.

Appellants assign error of the trial court in not permitting them to introduce evidence relating to incidents which occurred prior to the granting of the divorce decree in 1955, particularly as relating to the respondent's conduct and treatment of the child's mother; also in not permitting the introduction of evidence relating to respondent's troubles with his present wife early during their marriage, those events having occurred some six years prior to the custody proceeding at bar.

■ Objection to the introduction of evidence on the ground of remoteness in time "goes only to the weight or credibility of such evidence and is without merit, for if the evidence is otherwise admissible the weight to be given or credibility of the evidence is generally for the trier of the facts." In re Goan's Estate, 83 Idaho 568, 574, 366 P.2d 831, 835, 97 A.L.R.2d 384 (1961). See also Koch v. Elkins, 71 Idaho 50, 225 P.2d 457 (1950) and Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651 (1950).

■ "Ordinarily remoteness affects the weight of evidence rather than its admissibility." Casey v. Casey, 97 Cal.App.2d 875, 882, 218 P.2d 842, 847 (1950); Moiola v. Paggi, 5 Cal.App.2d 279, 281, 42 P.2d 331, 332 (1935).

■ "The determination of the question whether evidence is or is not too remote is for the determination of the trial court and it is clothed with wide discretion in this regard." Casey v. Casey, 97 Cal.App.2d at 882, 218 P.2d at 847; Moiola v. Paggi, 5 Cal.App.2d at 281, 42 P.2d at 332. See also Clement v. Cummings, 212 Or. 161, 317 P.2d 579 (1957); Zollars v. Barber, 140 Cal.App.2d 502, 295 P.2d 561 (1956); Adrian v. Elmer, 178 Kan. 242, 284 P.2d 599 (1955).

■ Findings of the trial court, if supported by substantial, competent evidence, will not be disturbed on appeal.

This rule applies to habeas corpus proceedings of a civil nature to determine the right to custody of a child. Moss v. Vest, supra; Jain v. Priest, 30 Idaho 273, 164 P. 364 (1917).

The judgment of the trial court is affirmed.

Costs to respondent.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.