543 P.2d 499

**Rodney Derryl DAWSON et al., Plaintiffs-Appellants,**

v.

**Ronald T. OLSON, Defendant-Respondent,**

v.

**State Farm Mutual Automobile Insurance Company, Intervenor-Respondent.**

**No. 11610.**

Supreme Court of Idaho.

Nov. 18, 1975.

---

R. B. Kading, Jr. and Dale G. Higer of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiffs-appellants.

Kent B. Power, Karl Jeppesen of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendant-respondent.

BAKES, Justice.

This is a wrongful death action arising out of a traffic accident in which Nathaniel and Hazel Dawson, husband and wife, were killed when the pickup truck driven by Hazel Dawson was struck by an automobile driven by the defendant Ronald T. Olson, an uninsured motorist. The accident occurred on January 12, 1968. On September 17, 1968, the plaintiffs, the children of Nathaniel Dawson, brought a wrongful death action against Olson. The Dawsons' automobile insurer, State Farm Mutual Automobile Insurance Company, petitioned to intervene on the ground that because the Dawson's policy contained an uninsured motorist provision, the insurance company had a vital interest in the outcome of this case. The petition to intervene was granted. The case was tried beginning October 5, 1970, and the jury returned a verdict for the plaintiffs for $75,000. Olson and State Farm both moved for a judgment notwithstanding the verdict or a new trial. On November 27, 1970, the trial court entered judgment notwithstanding the verdict for both the defendant and the intervenor. From this entry of judgment the plaintiffs appealed.

In *Dawson v. Olson*, 94 Idaho 636, 496 P.2d 97 (1972), we held that the judgment notwithstanding the verdict had been erroneously granted because there was sufficient substantial evidence to support the verdict, and remanded the case for further proceedings. Upon remand the trial judge granted the defendant- and intervenor-respondents' motion for new trial. The plaintiffs appealed from that order and, in *Dawson v. Olson*, 95 Idaho 295 507 P.2d 804 (1973), we affirmed the order granting a new trial. That trial was held on December 10 and 11, 1973, and resulted in a jury verdict for the defendant. Judgment was entered for the defendant. The plaintiffs moved for a new trial and the motion was denied. The plaintiffs have taken this appeal from the judgment and the denial of their motion for new trial.

The uncontradicted testimony given at the second trial disclosed the following sequence of events preceding the accident. The Dawson pickup was the second in a line of three vehicles that were exiting from Interstate 80N onto Franklin Road, Highway 20–26, at the interchange between the two highways near the eastern city limits of the city of Caldwell. Charles Ragsdale was driving the first vehicle in the line, a semi-truck trailer, which was pulling two 26-foot trailers and which had an overall length of approximately 64 feet. At the top of the exit ramp, where the ramp intersected Franklin Road which passes over Interstate 80N, there was a stop sign, a stop line and a flashing red light. Ragsdale brought his truck to a complete stop at the top of the ramp, then turned left to proceed easterly along Franklin Road away from the city of Caldwell. John H. Montgomery, the driver in the third vehicle in the line on the exit ramp, testified that as the truck moved away from the stop sign the Dawson pick-

up did not drive up to and stop at the stop line or stop sign at the top of the exit ramp; rather, it followed along closely behind Ragsdale's truck as that truck made a left hand turn onto Franklin Road, never stopping before it entered the intersection. The Dawson vehicle, which was turning left to proceed easterly along Franklin Road, was struck by the Olson vehicle as it was being driven westerly toward Caldwell. The collision occurred in the westbound lane. The impact severed the cab of the pickup from its bed and the camper sitting on the bed, throwing the cab some 116 feet from the point of impact. The Olson vehicle left no skid marks approaching the point of impact, nor did the witnesses report hearing any screeching of tires indicating that Olson had slammed on the brakes prior to impact.

The drivers of the truck and the vehicle following the Dawson pickup testified that the Olson vehicle was traveling at a speed of approximately 50 to 60 miles per hour immediately prior to impact. The posted speed limit at the overpass was 35 miles per hour, but the evidence indicated that a sign located approximately one quarter mile east of the overpass, facing the direction Olson was traveling, was posted at 50 miles per hour. Testimony also indicated that because Franklin Road arched over Interstate 80N at this interchange a person stopping at the stop sign or stop line had limited visibility of traffic approaching from the east because the driver could not see over the crest of Franklin Road, and that a driver turning left had to creep into the westbound lane in order to check for traffic approaching in that lane.

During trial the plaintiffs attempted to introduce the following evidence which was not admitted by the trial court: (1) a map of the interchange prepared by John L. Hoffman, a consulting engineer, which was prepared from official State Highway Department maps which were admitted into evidence, but which eliminated a great deal of the engineering detail found in those maps; (2) a chart of automobile stopping distances for various speeds taken from the Idaho Driver's Handbook; and (3) the testimony of witness Lawrence Reece that at a distance of approximately a mile and one half from the point of the collision he had been passed by the Olson vehicle and that the Olson vehicle was then traveling at approximately 90 miles per hour. This evidence was admitted by the trial court in the first trial, but excluded in the second trial.

Also, after the case was submitted to the jury and they had deliberated for two hours, the jury returned to court and the foreman asked the trial judge for further explanation of the meaning of "proximate" as given in the instructions to the jury using the phrase "proximate cause." The trial judge refused, telling them to reread the instruction number 4 because "that is the definition of it." (Rptr.Tr., p. 214).

The appellants assign as error the failure to admit into evidence the three items of evidence above discussed, the failure of the trial court to further instruct the jury on the meaning of proximate cause, and the failure of the trial court to grant the plaintiffs' motion for new trial. We hold that the trial court erred in excluding these items of evidence and in failing to further instruct the jury, and that the cumulative effect of these errors warrants a reversal of the trial court judgment and a remand of this case for a new trial.

I

The refusal of the trial court to admit the testimony of Lawrence Reece that, in his opinion, the Olson vehicle was traveling at a rate of 90 miles per hour a mile and a half from the point of collision was error. In sustaining the defendant's objection to Reece's testimony, the court stated it was so holding on the ground that the occurrence was too remote. In support of that ruling respondent argues that the record also reveals that Reece was incompetent to testify because he had an inadequate opportunity to observe the Olson vehicle as it passed him. Since we determine

here that the testimony was not remote as a matter of law, and that Reece was competent to give his opinion, we reject both grounds for excluding the testimony.

In *Koch v. Elkins*, 71 Idaho 50, 225 P.2d 457 (1950), a case in which the question of whether the driver of a vehicle involved in a one-car accident was negligent was at issue, the trial court allowed into evidence the defendant's plea of guilty to a charge of reckless driving occurring three quarters of a mile away and less than two minutes before the time of the accident. In that case we said:

> "Even if it be assumed that the guilty plea constituted an admission by the defendant as to the manner of his driving only at the time he passed the truck, and not at the time the car left the highway, it would still be admissible. Elkins, himself, testified that he was traveling about 25 miles per hour just before the accident. *At that rate he would travel the three-fourths mile in less than two minutes. This would not be too remote to have some weight as an admission as to the manner of driving at the time of the accident.*" 71 Idaho at 54, 225 P.2d at 460. (Emphasis added).

■ In the case at bar, Reece was prepared to testify that the Olson vehicle had passed him, traveling at a rate of approximately 90 miles per hour, at a point about a mile and a half from the scene of the accident. A vehicle traveling between 60 and 90 miles per hour will traverse a mile and one half in from 60 to 90 seconds. Under the *Koch* holding, this could not be considered too remote to have some weight as evidence of Olson's speed at the overpass.

Further, in a case which involved the same issue as to the admissibility of an opinion of the speed of the vehicle in question shortly before the collision, the Supreme Court of Pennsylvania stated:

> "Remoteness of the evidence is not determinable by distance and time alone, but . . . depends upon the facts in each case. No exact limitation of distance or time can be fixed. Where the

accident occurs in a city, for instance, with intersecting streets and traffic, evidence of a speed at a comparatively short distance before the accident may be too remote, whereas in rural areas evidence of speed at a greater distance may be relevant." *Finnerty v. Darby*, 391 Pa. 300, 138 A.2d 117, at 125 (1958). The stretch of highway from the point where the Olson vehicle passed Reece to the freeway overpass was straight and dry. We hold that the speed of that vehicle at the point at which Reece observed it is not too remote, but is admissible, "its weight and credibility being for the jury." *Finnerty v. Darby, supra*, 138 A.2d at 124.

■ Respondent claims as an additional ground for excluding the testimony that Reece was incompetent to state his opinion as to the speed of the Olson vehicle because Reece's attention had been diverted by some activity in a field to his right as the Olson vehicle passed him. This diversion, it is claimed, resulted in an insufficient observation of the Olson vehicle to form an opinion as to speed. While evidence of such diversion may have afforded the defendant an opportunity to attack the weight of Reece's testimony, it did not constitute grounds for excluding the opinion altogether, in light of the foundation laid by the plaintiffs as to Reece's competency.

Reece's foundation testimony established that he had been aware of the car approaching from the rear, that he observed it through his rear view mirror and as it passed him, and that he had flashed his lights at the driver of the car to indicate that it was safe to return to the right hand lane. He stated that he had been driving for about twenty five years and had formerly been a race car driver. Prior to asking for the opinion objected to, counsel asked Reece whether he had formulated an opinion as to the speed of the vehicle and on what he would base his opinion. Reece stated that he did have an opinion and then responded:

> "A. Well, partly on the way that the car drove up behind me, and the time

that he took to pull back from the left lane into the right lane.

"By the time he went clear around me I was almost to Lakey's, and, and by the time he pulled back into the lane he was almost up to Bob Nichols sign which is several hundred feet from the service, or the area there where you pull into Lakey's.

"Q. And you would base it in part on your own experience as a driver?

"A. Right. I raced for several years, and I am quite aware of the speed that people are driving up behind me, and what they are driving around me at the time." (Rptr. Tr., pp. 90–91).

Since a proper foundation for the opinion was laid, and that opinion evidence was relevant and tended to support plaintiffs' theory of the case, it was error to exclude that testimony.

■ Respondent claims that even if the exclusion of the testimony was error it was not prejudicial because it was merely cumulative of other evidence of speed which was admitted at trial. *County of Bonner v. Dyer*, 92 Idaho 699, 448 P.2d 986 (1968). However, we do not think that Reece's testimony was cumulative. Two witnesses who were at the overpass at the time of the collision stated that they thought the Olson vehicle was traveling from 50 to 60 miles per hour. However, both witnesses qualified their opinions by stating that they could only observe the car approaching from the crest of the overpass. The three opinions, taken together, tended to prove plaintiffs' theory that the Olson vehicle was traveling at an excessive speed at the time of the collision and even had the Dawson vehicle stopped it could not have seen the rapidly approaching Olson vehicle because of the curvature of the overpass, or even if visible, the driver of the Dawson vehicle might have reasonably concluded that she had adequate time to execute the turn onto Franklin Blvd., and thus it was the Olson vehicle's excessive speed and not Dawson's failure to stop which was the proximate cause of the collision.

■ There is a further indication that the exclusion of Reece's testimony was prejudicial. At the first trial of this case, when the trial court admitted Reece's opinion over objection that it was too remote, the jury found for the plaintiffs, the necessary implication being that they had determined that it was the defendant's negligence which proximately caused the accident. In the second trial, upon the exclusion of that same evidence, the jury found for the defendant. We conclude that the excluded evidence was material and that its exclusion was prejudicial.

II

Appellants next claim that the district court erred in refusing to admit into evidence plaintiffs' exhibit 1, the enlarged and simplified map of the interchange prepared by John L. Hoffman, a consulting engineer, from official Idaho Department of Highway maps. The simplified map was admitted without objection at the first trial of this action. In the second trial, plaintiffs offered the map, exhibit 1, three times and each time it was excluded from evidence. It was first offered at the beginning of the trial during plaintiffs' direct examination of Hoffman. Counsel for defendant objected to its admission on the ground that the map was hearsay since the expert had no first hand knowledge of the accuracy of the official maps from which he obtained his information, and at this time the official maps were not in evidence. Plaintiffs did not indicate at this time whether they intended to use the map, exhibit 1, as substantive evidence or for illustrative purposes only. The objection was sustained. Later in the trial, a district engineer for the Idaho Department of Highways testified that the proffered map, exhibit 1, was an accurate representation of the official plans of the overpass as constructed. Based on this foundation testimony, plaintiffs again offered into evidence the simplified map, exhibit 1, again without indicating the purpose for which it was offered. The court ruled that since the official maps were available, they

should be admitted instead. Finally, the map, exhibit 1, was again introduced at the close of plaintiffs' case and after all plaintiffs' witnesses had testified. Only then did plaintiffs specifically state that the map, exhibit 1, was offered for illustrative purposes. Defendant's objection, again on hearsay grounds, was again sustained.

■ The simplified map should have been admitted, at least to illustrate the testimony of witnesses under the rule set forth in *McKee v. Chase*, 73 Idaho 491, 253 P.2d 787 (1953):

"Photographs, maps, and other drawings, are recognized as proper evidence to supplement the testimony of witnesses where the subject matter of the testimony is difficult to portray without such aids, or where the jury can be given a better understanding of the physical facts with which they are concerned. Their admission is proper to illustrate the testimony. They are also regarded as a proper means of expressing the witness' testimony. That is, a witness may be unable, by means of words or gestures alone, to convey to the jury an accurate understanding or picture of the relative position of the physical objects or their physical characteristics, without the assistance of photographs or drawings. So, he may make a drawing or a photograph, or identify and adopt such drawing or photograph, made by another, as a means of portraying to the jury facts which are within his knowledge, and which he is not as well able to portray without such help." 73 Idaho at 501–502, 253 P.2d at 792–793.

The expert Hoffman had also prepared scale models of the Dawson pickup, Ragsdale's semi-truck and the Olson automobile, which exhibits were admitted into evidence without objection. Plaintiffs obviously intended that witnesses would use these models and the simplified map to illustrate their descriptions of relative positions and movements of the vehicles. Without the map, the models of the vehicles were of no help to the witnesses. Since it was apparent that the map was being introduced for illustrative purposes at least, it was error for the trial court to refuse to admit the simplified map for that limited purpose.

■ On retrial if the map, exhibit 1, is also offered as substantive evidence, e. g., to prove the facts and details shown therein, then it is hearsay evidence and is only admissible if the requirements of the hearsay rule are met. *Hook v. Horner*, 95 Idaho 657, 517 P.2d 554 (1973). The Department of Highway maps are admissible as official public documents under I.C. §§ 9–311(3), 9–315. These maps contain considerable engineering minutiae, e. g., details of curve construction such as points of tangency and the like, which give the jury no information relevant or necessary to decide the case, but which might confuse the jury because of the intricate detail. Where it is shown that the simplified version of the map was prepared by a qualified person, and where the original official maps have themselves been introduced into evidence, we see no reason, under the best evidence or the hearsay rules, why the simplified version may not be used to prove the details shown therein. The trustworthiness of the simplified map is ensured by the right of the opposing party to examine it and compare it with the original, and to cross examine the expert who prepared it. The utility of a simplified version of a detailed and complex map or other diagram is analogous to the statutory exception to the best evidence rule formulated in I.C. § 9–411(5) [1] which permits the introduction of summaries of voluminous accounts or documents as a practical, time saving device in appropriate situations. *See also* Wigmore on Evidence, § 1230

1. "9–411. SECONDARY EVIDENCE OF WRITINGS—WHEN ADMISSIBILE.— There can be no evidence of the contents of a writing other than the writing itself, except in the following cases:

. . . . . .

"5. When the original consists of numerous accounts or other documents which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole.

. . . . ."

(Chadbourn Rev., 1972); 29 Am.Jur.2d, Evidence, § 458.

### III

■ Appellants claim that the chart prepared from the Idaho Driver's Handbook showing average stopping distances should have been admitted into evidence. We agree. This chart may be admitted if it is relevant and material. *Bell v. Joint School Dist. No. 241,* 94 Idaho 837, 499 P.2d 323 (1972); *Dewey v. Keller,* 86 Idaho 506, 388 P.2d 988 (1964). In this case a question which the jury must necessarily consider in deciding if Olson's negligence was a cause of the collision was whether, if Olson had been driving his car at a lawful rate of speed and had been attentive as a reasonable and prudent driver to the conditions in the roadway ahead of him, could he by exercising the skills of a reasonable and prudent driver have stopped before colliding with the Dawson vehicle or otherwise avoided the accident by taking appropriate action at that point when he should first have become aware that the Dawson vehicle presented a road hazard ahead. The stopping chart is certainly relevant and material in deciding that question and should have been admitted. It would not be for the purpose of estimating the speed of the approaching vehicle, as in *Dewey, supra,* when there was insufficient evidence introduced at trial to allow such an estimation to be made. The chart would here constitute a valuable tool in helping the jury estimate the ability of a reasonable driver traveling at a lawful rate of speed over an arched roadway to avoid a collision with an object first appearing before him as he travels over the crest of the overpass.

### IV

■ In their next assignment of error, appellants claim that the district court should have further instructed the jury on the definition of "proximate" when requested to do so by the jury. The court gave the following instruction defining proximate cause:

### "INSTRUCTION NO. 4

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury." Rept. Tr., Vol. 3, p. 5.

Taken alone, this instruction is misleading. From the evidence introduced at trial the jurors could have concluded that the injury was caused by (1) both the negligence of respondent Olson and Hazel Dawson, (2) by the negligence of either Olson or Hazel Dawson alone, or (3) that it was not caused by the negligence of either party. But instruction number 4 could easily be interpreted to mean that there can be only one proximate cause of an injury. This is incorrect. Although this Court said in *Stearns v. Graves,* 62 Idaho 312, 111 P.2d 882 (1941), that there could be only one proximate cause of an injury, it rejected the one cause rule in *Pigg v. Brockman,* 85 Idaho 492, 381 P.2d 286 (1963). In *Pigg* we found an instruction substantially like instruction number 4 to be erroneous because it might mislead the jury into thinking that only one act of negligence could be the cause of an injury.

In its instruction number 34, however, the court outlined the issues to be resolved by the jury, setting forth questions as to whether Olson was negligent and if so whether his negligence was a proximate cause of the injury, and also whether Hazel Dawson was negligent and if so whether her negligence contributed as a proximate cause of the injury.[2] This instruc-

---

2. "INSTRUCTION NO. 34
  "The issues to be determined by you in this case are these:

"First: Was the defendant Olson negligent? If you answer that question in the negative, you will return a verdict for the defendant.

tion suggests that there can be more than one cause of an injury and correctly reflects the rule of *Pigg v. Brockman, supra.* In the absence of any indication that the jury was confused by the interaction of instruction number 4 and instruction number 34, we would be inclined to hold that the instructions, taken as a whole, were not misleading or erroneous. *Werry v. Phillips Petroleum Co.,* 97 Idaho 130, 540 P.2d 792 (1975). *Cf. Shields v. Morton Chemical Company,* 95 Idaho 674, 518 P.2d 857 (1974). However, the jury asked the court for further amplification of the definition of "proximate cause" and the trial court refused it, telling them to reread instruction number 4 because "that is the definition of it." This abrogated any curing effect of instruction number 34 and refocused the jury's attention on instruction number 4. Thus, under the circumstances of this case we cannot say that instruction number 34 cured instruction number 4.

■ As a general rule the decision to further instruct a jury on a matter is within the trial court's discretion. *State v. Chang,* 50 Haw. 195, 436 P.2d 3 (1967); *Whisnant v. Holland,* 206 Or. 392, 292 P.2d 1087 (1956); *Muskin v. Gerun,* 46 Cal. App.2d 404, 116 P.2d 105 (1941). However, the rule as stated in each of the above cited cases is premised on the fact that the instructions as given were clear, direct and proper statements of the law. In this case, instruction number 4 was a confusing and unnecessarily technical statement of the law and was susceptible to an erroneous interpretation.[3]

■ In *Worthington v. Oberhuber,* 419 Pa. 561, 215 A.2d 621 (1966), a case in which the jury deliberated for three hours, then asked for further instructions on negligence and the duty of drivers at intersections, but were not given the requested instructions, the Supreme Court of Pennsylvania stated:

> "There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, *the court has the duty* to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion." 215 A.2d at 621 (Emphasis added).

We believe that the trial court did have a duty in this case to clarify its definition of proximate cause when the jury returned to court indicating its confusion.

## V

In light of the trial court's error in refusing to admit the testimony of the wit-

---

If you answer it in the affirmative, you have a second issue to determine, namely:

"Was the negligence a proximate cause of the death of Nathaniel C. and Helen J. [sic] Dawson?

"If you answer that question in the negative, plaintiffs are not entitled to recover, but if you answer it in the affirmative, you then must find on a third question:

"Was the deceased Helen [sic] G. Dawson negligent?

"If you find that she was not, after having found in plaintiffs' favor on the other two issues, you then must fix the amount of plaintiffs' damages and return a verdict in their favor.

"If you find that said deceased was negligent, you then must determine a fourth issue, namely:

"Did that negligence contribute as a proximate cause of the death of Mr. and Mrs. Dawson, of which the plaintiffs here complain?

"If you find that it did, your verdict must be for the defendant, but if you find that it did not, and you previously have found that negligence on the defendant's part was a proximate cause of the deceaseds' injury, you then must fix the amount of plaintiffs' damages and return a verdict in their favor.

"As indicated in this instruction, you should first determine the question of liability before you undertake to fix an amount that would compensate for damage, if any, found to have been suffered." Rptr.Tr., Vol. 3, pp. 19–20.

3. Compare the relative clarity of IDJI 230, on proximate cause:

"When I use the expression 'proximate cause,' I mean a cause which, in natural or probable sequence, produced the damage complained of. It need not be the only cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes damage."

ness Reece, the simplified map of the interchange, and the stopping chart from the Idaho Driver's Handbook, and in failing to further instruct the jury on the meaning of proximate cause, we are constrained to hold that the plaintiff appellants were denied a fair trial on the merits of their claim. The rule is well stated in *Ivie v. Richardson,* 9 Utah 2d 5, 336 P.2d 781, 787 (1959):

"It is unnecessary and would serve no useful purpose for us to decide whether any one of the errors above discussed, considered separately, would constitute sufficient prejudicial error to require a new trial. The question is whether the case was presented to the jury in such a manner that it is reasonable to believe there was a fair and impartial analysis of the evidence and a just verdict. If errors were committed which prevented this being done, then a new trial should be granted, whether it resulted from one error, or from several errors cumulatively. We expressly do not mean to say that trivia which would be innocuous in themselves can be added together to make sufficient error to result in prejudice and reversal. The errors must be real and substantial and such as may reasonably be supposed would affect the result. However, errors of the latter character, which may not by themselves justify a reversal, may well, when considered together with others, render it clear that a fair trial was not had. In such event justice can only be served by the granting of a new trial, absent the errors complained of."

For all of the foregoing reasons we feel that sufficient error was committed in the second trial of the above matter the cumulative effect of which denied the appellants a fair trial. Therefore, the cause is reversed and remanded for a new trial.

Appellants assert one additional assignment of error, i. e., the failure of the trial court to grant their motion for new trial which was based upon several alleged prejudicial rulings of the trial court. We do not reach this question in view of our disposition of this case and the provisions of I.R.C.P. 40(d)(1).

Reversed and remanded for new trial. Costs to appellants.

McQUADE, C. J., and DONALDSON and SHEPARD, JJ., concur.

McFADDEN, Justice (dissenting).

I must respectfully dissent from the opinion of the majority.

Each of the grounds relied upon by the majority—the refusals to admit Reece's testimony, exhibit 1, and the chart showing average stopping distances, and the refusal to clarify an instruction given—are matters which, in the past, have been matters for the discretion of the trial court.

" 'The determination of the question whether evidence is or is not too remote is for the determination of the trial court and it is clothed with wide discretion in this regard.' " *Blankenship v. Brookshier,* 91 Idaho 317, 322, 420 P.2d 800, 805 (1966), quoting *Casey v. Casey,* 97 Cal.App.2d 875, 218 P.2d 842, 847 (1950).

"As with other types of evidence, demonstrative evidence, though otherwise admissible, is subject to the broad discretionary power of the judge to exclude it if he finds that its probative value is outweighed by the danger that the jury will be unduly prejudiced or give it more weight than it is entitled to, or that the attention of the jury will be distracted to collateral matters, or that it will entail an unwarranted waste of time and the like." Gard, 3 Jones on Evidence § 15.2, p. 5 (6th ed. 1972).

"In order to be admissible, such evidence [a chart showing average stopping distances published in the Idaho Driver's Handbook] must be relevant and material; but it is within the discretion of the trial court to determine whether sufficient foundation has been laid to admit such a chart." *Bell v. Joint School Dist.*

*No. 241*, 94 Idaho 837, 840, 499 P.2d 323, 326 (1972).

"As a general rule the decision to further instruct a jury on a matter is within the trial court's discretion." (Majority opinion, supra.)

Nevertheless, the majority reviewed only one issue, the trial court's refusal to clarify an instruction given, as a matter committed to the discretion of the trial court.

The term, "abuse of discretion", necessarily implies that the trial court should enjoy some latitude in ruling on a matter committed to the trial court's discretion before this court will reverse that discretionary ruling. In my opinion, such discretion should be given as the trial court, not this court, is charged with the responsibility of conducting the trial. If we do not entrust the trial court with certain discretionary powers, we will be forced to try every appeal anew in this court; my opinion, which is apparently contrary to that held by the majority, is that a trial de novo is not the appropriate role for an appellate court.

The Supreme Court of Oregon has discussed the question of trial court discretion as it pertains to the admission of evidence.

"In this case, the evidence in question was objected to as being too 'remote.' Such an objection requires the trial judge to assess the probative value of the proffered evidence, and to weigh the probative value against various considerations which may militate against admissibility, such as undue prejudice, introduction of collateral issues, consumption of undue time, or unfair surprise to the other party. McCormick on Evidence (2d ed. 1972) 439–440 § 185. If he finds the evidence to have no probative value, he must exclude it. If, on the other hand, it does tend to establish a fact in issue, and no contrary considerations are pres-

ent in the particular case, the evidence must be admitted. Between these two extremes, however, is an area in which further judgment must be exercised. If the evidence has some probative value, but also presents difficulties such as those mentioned above, the judge must determine whether the value of the evidence outweighs, or is outweighed by, the offsetting considerations. We sometimes call the exercise of this kind of judgment 'discretion.' Its exercise requires the judge to weigh the value of the evidence in light of all the circumstances of the particular case, and his conclusion, if it is reasonable, will not be disturbed on appeal. Precedent is of little value in reviewing such cases, because even when cases involve similar issues and similar types of evidence, the other factors which may properly influence the trial court's ruling are highly variable. We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether his ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer." *Carter v. Moberly*, 263 Or. 193, 501 P.2d 1276, 1279–80 (1972).

See, Rosenberg, "Judicial Discretion", 22 Syracuse L.R. 635–667 (1971). This court, reviewing a ruling committed to the discretion of the trial court, should not rule upon the question as a matter of law, nor should this court substitute its judgment for that of the trial court. Rather, we should only review a discretionary matter to determine if the trial court's ruling was reasonable, not if the ruling was the ruling which this court would have made.[1]

---

1. Professor Rosenberg explains the concept of judicial discretion with a rather graphic analogy:

"An area of trial court discretion is a pasture in which the trial judge can roam and graze freely rendering rulings his appellate betters might not have made, unless and until the higher court fences off a corner of the pasture by announcing that a rule of law covers the situation and has been violated. Until that occurs, the trial judge, wielding discretionary power, need

The majority has ruled upon the trial court's refusal to admit Reece's testimony as a matter of law:

"We hold that the speed of that vehicle at the point at which Reece observed it is not too remote, but is admissible, 'its weight and credibility being for the jury' ".

But, as this court held in *Blankenship v. Brookshier,* supra, the question is a question for the discretion of the trial court.

In both cases cited by the majority, *Koch v. Elkins,* 71 Idaho 50, 225 P.2d 457 (1950), and *Finnerty v. Darby,* 391 Pa. 300, 138 A.2d 117 (1958), the trial court admitted evidence of speed or manner of driving over an objection, and the appellate court affirmed the ruling. Thus, the appellate court was upholding, in effect, the trial court's exercise of discretion. If, on the same facts, the trial court had rejected the offered evidence, an appellate court generally could have affirmed that ruling also. Inherent in the concept of trial court discretion is a "gray area" wherein a trial court's decision should not be reversed regardless of whether that decision admits or rejects evidence because reasonable men could differ as to the "right" decision. In other words, a ruling committed to the discretion of the trial court need only be reasonable and the "gray area" arises when reasonable men could have ruled either way. The cases cited by the majority hold that it was reasonable to admit the evidence; they do not hold, as the majority concludes, that it was unreasonable and reversible error to refuse to admit the evidence.

Reece's testimony had probative value; the speed of the Olson vehicle was at issue and, if permitted, Reece would have testified that he observed the Olson vehicle traveling 90 miles per hour at a location a mile and one-half from the accident scene a minute to two minutes prior to the time when Reece observed the burning wreckage of Olson's car. If I were sitting as the trial judge in this case, I would have ruled Reece's testimony to be admissible. But, as an appellate judge reviewing the trial court's ruling, I cannot say that his ruling was without a reasonable basis and so was an abuse of discretion.

Exhibit 1, the enlarged and simplified map of the intersection, was offered into evidence three times and each time the trial court excluded the exhibit. The majority found this to be error. It was not until exhibit 1 was offered the third time, at the close of the plaintiffs' case, that the plaintiffs specifically stated that the map was offered for illustrative purposes. The inference of the majority opinion is that the trial judge, on the two prior occasions when exhibit 1 was offered, should have realized that exhibit 1 was offered for illustrative purposes.

"* * * Since it was apparent that the map was being introduced for illustrative purposes at least, it was error for the trial court to refuse to admit the simplified map for that limited purpose."

Considering the fundamental tenets of our advocacy system, I think that exhibit 1 was offered for illustrative purposes only once —at the close of the plaintiffs' case. As the defendants did not present any evidence, exhibit 1, in effect, was offered at the close of the evidence for illustrative purposes. I do not think that it was an abuse of discretion by the trial court to refuse to admit exhibit 1 for illustrative purposes *at this point in the trial.* All the evidence, including an engineering map of the intersection from which the simplified map, exhibit 1, was compiled, was in. Thus, there remained no evidence to be presented which could have been illustrated or clarified by the use of exhibit 1. I think that the trial court correctly exercised its discretion by excluding exhibit 1; to have admitted exhibit 1 at this time may

not be right by appellate court lights in order to be upheld. Even if the appellate judges disagree with his call, they will

defer to him." Rosenberg, 22 Syracuse L. R. 650 (1971).

have confused the jury and certainly was an unwarranted waste of time since the official engineering drawing was already in evidence. Gard, 3 Jones on Evidence, § 15.2 (6th ed. 1972).

The majority holds that a chart prepared from the Idaho Driver's Handbook showing stopping distances should have been admitted into evidence. The defendants objected to the admission of the chart because there was "no evidence  *  *  * that either car tried to stop" and so "stopping distances would [not] be material". The trial court sustained this objection. In the opinion of the majority, this chart was relevant:

" *  *  * In this case a question which the jury must necessarily consider in deciding if Olson's negligence was a cause of the collision was whether, if Olson had been driving his car at a lawful rate of speed and had been attentive as a reasonable and prudent driver to the conditions in the roadway ahead of him, could he by exercising the skill of a reasonable and prudent driver have stopped before colliding with the Dawson vehicle or otherwise avoided the accident by taking appropriate action at that point when he should first have become aware that the Dawson vehicle presented a road hazard ahead. The stopping chart is certainly relevant and material in deciding that question and should have been admitted."

In essence, the majority asserts that an issue for the jury was whether Olson had the last clear chance to avoid the accident and that the chart was relevant to this issue. See, *Edwards v. Walker,* 95 Idaho 289, 507 P.2d 486 (1973). However, the jury was not instructed on the doctrine of last clear chance and the plaintiffs have not assigned this failure to instruct as error. The chart was not relevant as the last clear chance doctrine was not at issue in the case; therefore, in my opinion the trial court did not abuse its discretion by refusing to admit the chart.

The majority opinion holds that "the trial court did have a duty in this case to clarify its definition of proximate cause when the jury returned to court indicating its confusion. The majority does recognize that "[a]s a general rule the decision to further instruct a jury on a matter is within the trial court's discretion". I cannot agree with the majority that instruction number 4 was so confusing that the trial court had a duty to give a clarifying instruction. The import of instruction number 4, insofar as it defines proximate cause, is similar to the Idaho Jury Instruction on proximate cause. Instruction number 4 is confusing in that it fails to instruct the jury that there may be more than one proximate cause. However, I believe that this confusion was cured by instructions number 8,[2] 27,[3] and 34. The instructions given must be considered as a whole. Considering the other instructions given and the inherent complexity of the concept of proximate cause, I do not think that instruction number 4 was so confusing that the trial court abused its discretion by refusing to clarify instruction no. 4.

Finally, I think that the majority has chosen to ignore several precepts basic to appellate procedure in reaching their decision. This court has long adhered to the principle that the burden of showing error is on the appellant. *Close v. Rensink,* 95 Idaho 72, 501 P.2d 1383 (1972); *Hill v. Porter,* 38 Idaho 574, 223 P. 538 (1924). See, *Murphy v. Fuld,* 2 Idaho 175, 9 P. 609 (1886). Also, this court has long held that, on appeal, the facts must be viewed in the light most favorable to the respondent. *May v. Triangle Oil Co.,* 96 Idaho 289, 527

---

2. " *  *  * In order to amount to contributory negligence, a person's conduct must be not only negligent but also *one of the proximate causes* of the injury or damage." Instruction no. 8 (emphasis added).

3. " *  *  * it will be your duty to award the party  *  *  * damages in such amount as will reasonably compensate said party for all detriment suffered by said party, of which the negligence, if any, of said other party or parties, *was a proximate cause.*" Instruction no. 27 (emphasis added).

P.2d 781 (1974); *Page v. Savage,* 42 Idaho 458, 246 P. 304 (1926). The most graphic example of the majority's ignoring these precepts is their analysis of the trial court's exclusion of the chart showing average stopping distances. Not only did the majority refuse to view the record in the light most favorable to the defendants-respondents, but they gave the plaintiffs-appellants the benefit of a new theory of the case, last clear chance. The jury was not instructed on the doctrine of last clear chance and the court's failure to so instruct was not assigned as error. Thus, according to the principles of appellate review, the doctrine of last clear chance was not relevant to this case. Nonetheless, the majority has seen fit to give the plaintiffs-appellants a new theory by which the case can be reviewed on appeal. Thus, I am forced to conclude that the majority's opinion is a departure from the traditional rules of appellate review. In my opinion, the judgment should be affirmed.